**Johnny Lee ROBERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–01–148–CR.

Court of Appeals of Texas,
Waco.

Dec. 31, 2002.

Rehearing Overruled April 9, 2003.

Walter M. Reaves, Jr., for appellant.

John W. Segrest, McLennan County Dist. Atty., James Wiley, McLennan County Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Johnny Lee Roberson of sexual assault and sentenced him to seventeen years' imprisonment and an $8,000 fine. In two points, Roberson argues that: 1) the trial court erred in allowing a police officer to testify about characteristics of sexual abuse victims without qualifying the officer as an expert; and 2) the trial court erred in denying his motion for mistrial after the prosecutor twice commented on his failure to testify.

## OPINION TESTIMONY

In point one, Roberson argues that the trial court erred in allowing a police officer to testify about characteristics of sexual assault victims without qualifying the officer as an expert on that subject.

The testimony of Officer Lanning, the arresting officer, indicated that he had done some follow-up investigations in sexual assault cases. He did not state how many times he had investigated sexual assault cases and testified that he now was primarily assigned to making arrests on warrants. Lanning was then asked the following on redirect examination:

> Officer Lanning, do you know if it is common or uncommon that complaintant's [sic] in a sexual abuse situation to eventually reveal more and more about the abuse, especially when they are considered to be children?

Roberson objected on the basis that the officer must be shown to be an expert on

sexual abuse cases before answering the question. The court overruled the objection and Lanning responded:

> In my experience, it is more common when they reveal progressively more when they become more comfortable with the fact that they are going to talk to the police or whatever authorities.

A person may offer an opinion as a lay witness if it is based on the perception of that person, and helpful to a clear understanding of his testimony or determination of a fact in issue. TEX.R. EVID. 701. The Court of Criminal Appeals recently reiterated, "[W]e conclude that once the proponent of the opinion establishes personal knowledge of the facts underlying the opinion, he has satisfied the perception requirement of Rule 701." *Solomon v. State*, 49 S.W.3d 356, 364 (Tex.Crim.App. 2001) (quoting *Fairow v. State*, 943 S.W.2d 895, 899 (Tex.Crim.App.1997)). Specifically, a police officer's personal knowledge may come from his past experience. *See Thomas v. State*, 916 S.W.2d 578, 580–81 (Tex.App.-San Antonio 1996, no pet) (police officer qualified as both lay witness and expert to testify his opinion as to how "crack" houses are usually run); *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.-Houston [1st Dist.] 1994, no pet.) (based on training and experience, a police officer may testify under Rule 701 that a defendant's actions are consistent with someone selling cocaine); *Williams v. State*, 826 S.W.2d 783, 785 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd) (using past experience, a police officer was permitted to testify, as either a lay witness or an expert, that he interpreted the defendant's actions to be a drug transaction); *Austin v. State*, 794 S.W.2d 408, 409–11 (Tex.App.-Austin 1990, pet. ref'd) (police officer permitted to testify that, based on his personal experience, it was his opinion that "Swedish deep muscle rub" was a code for

prostitution). Whether an opinion meets the fundamental requirements of Rule 701 is within the sound discretion of the trial court and its decision regarding admissibility should be overturned only if the court abuses its discretion. *Fairow*, 943 S.W.2d at 901.

Here, Lanning testified that he had personal knowledge of the behavior of sexual assault victims through his years as an officer. Thus, his testimony that it is more common for sexual assault victims to reveal more as they become comfortable talking with law enforcement was based upon his personal knowledge and experience. The evidence was also helpful in determining the fact issue regarding whether or not sexual abuse victims commonly withhold information until they better trust law enforcement, thus satisfying the second prong of Rule 701. Because there is evidence in the record to support the trial court's decision to admit the opinion testimony, we do not find that the trial court abused its discretion. *Id.*

Even assuming that the trial court erred in permitting Lanning to express his opinion, admission of this testimony was harmless. Texas Rule of Appellate Procedure 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Reese v. State*, 33 S.W.3d 238, 243 (Tex.Crim.App.2000) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998)).

In the present case, the jury previously heard testimony from Detective Hoyta that it is not uncommon for victims

of sexual abuse to fail to disclose everything in an initial meeting with law enforcement. This unobjected-to testimony elicited from Hoyta is nearly identical to Lanning's testimony. "[I]t is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered." *Hernandez v. State*, 914 S.W.2d 226, 233 (Tex. App.-Waco 1996, no pet.) (quoting *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim. App.1984)). It should also be noted that Roberson's counsel initiated the questioning resulting in Hoyta's testimony that it is not uncommon for a sexual assault victim not to reveal "everything." Moreover, Lanning did not purport to be an expert or otherwise be in a position to possess information not already related to the jury. *See Solomon*, 49 S.W.3d at 365.

Based on the entire record we conclude that his opinion added little, if any, weight to the evidence against Roberson. *Id.* Under the circumstances, we have a fair assurance that the evidence did not influence the jury or had but a slight affect. *Id.* Furthermore, any error is cured because the same evidence came in elsewhere without objection. *See Hernandez*, 914 S.W.2d at 233.

Accordingly, point one is overruled.

## COMMENT ON FAILURE TO TESTIFY

In his second point, Roberson argues that the trial court erred by failing to grant his motion for mistrial after the prosecutor improperly commented on his failure to testify. The State responds that the court's instruction to disregard cured the prejudicial effect of the prosecutor's comment.

During closing argument in the punishment phase, the prosecutor made the following statement:

He told you that he is not guilty just a few days ago. He's been in jail for how ever many months, and apparently that didn't work for him to come around and want to be rehabilitated even after he sat there and thought about it, been punished, been in an adult time-out situation if you will. He has the same mentality. I didn't do it, I am going to say I didn't do it, and I am not going to stand up—

Roberson objected. The court sustained his objection and instructed the jury, "I sustain the objection and instruct the jury that they will disregard the last statement of counsel for the State for any purpose whatsoever." Roberson requested a mistrial, which the court denied.

The prosecutor continued:

You heard the defendant plead not guilty. Before you can change you have got to admit that you have done something wrong. And he has not done that. You have got to want to with all your might change your habits. And that is exactly the opposite of what we have got here.

And even if all those things are present, you want to, you admit you are wrong, you feel—

Roberson again objected. The court sustained the objection and repeated the prior instruction to disregard. Roberson again requested a mistrial, which the court denied.

A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex.Crim.App. 2001). Such a comment also runs afoul of

article 38.08 which prohibits the State from alluding to or commenting on an accused's failure to testify. Tex.Code Crim. Proc. Ann. art. 38.08 (Vernon 1979); *Montoya v. State*, 744 S.W.2d 15, 34 (Tex. Crim.App.1987) (opinion on reh'g); *Broderick v. State*, 35 S.W.3d 67, 77 (Tex.App.-Texarkana 2000, pet. ref'd); *Chimney v. State*, 6 S.W.3d 681, 702 (Tex.App.-Waco 1999, pet. filed).

To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Bustamante*, 48 S.W.3d at 765.

■ The State's argument, especially the latter one, focused on Roberson's failure to take the stand and admit his guilt. This clearly constitutes a comment on his failure to testify.[1]

### Effectiveness of Instruction to Disregard

■ The court's denial of Roberson's motion for mistrial constitutes error only if the court's instruction to disregard was inadequate to cure the prejudicial effect of the improper argument. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex.Crim. App.1994); *Foster v. State*, 25 S.W.3d 792, 798 (Tex.App.-Waco 2000, pet. ref'd). As

we determine whether the instruction was adequate, we must bear in mind that an instruction is presumptively inadequate only in the most blatant cases. *Moore v. State*, 999 S.W.2d 385, 405 (Tex.Crim.App. 1999) (citing *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995); *Waldo v. State*, 746 S.W.2d 750, 753 (Tex.Crim.App. 1988)); *Faison v. State*, 59 S.W.3d 230, 240 (Tex.App.-Tyler 2001, pet. ref'd).

This Court has determined that we will gauge the effectiveness of an instruction to disregard by giving consideration to the following factors:

- the nature of the error;
- the persistence of the prosecutor;
- the flagrancy of the violation;
- the particular instruction given;
- the weight of the incriminating evidence; and
- the harm to the accused as measured by the severity of the sentence.

*E.g., Veteto v. State*, 8 S.W.3d 805, 811 (Tex.App.-Waco 2000, pet. ref'd) (citing *Waldo*, 746 S.W.2d at 754); *Mendoza v. State*, 959 S.W.2d 321, 324 (Tex.App.-Waco 1997, pet. ref'd); *accord Hardin v. State*, 20 S.W.3d 84, 93–94 (Tex.App.-Texarkana 2000, pet. ref'd); *Fletcher v. State*, 852 S.W.2d 271, 275–76 & n. 5 (Tex.App.-Dallas 1993, pet. ref'd).

### Nature of Improper Comment

We have previously referred to this first factor as the "nature of the *error.*" *See Veteto*, 8 S.W.3d at 811. However, the "error" at issue in these cases is whether the trial court acted sufficiently to obviate the prejudicial effect of a prosecutor's improper actions. *Chimney*, 6 S.W.3d at 703; *Washington v. State*, 822 S.W.2d 110, 118 (Tex.App.-Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex.Crim.App.

---

1. The State does not contend otherwise.

1993); *accord Faulkner v. State*, 940 S.W.2d 308, 314–15 (Tex.App.-Fort Worth 1997, pet. ref'd). Therefore, because we have not yet determined whether the court committed "error," it is more appropriate to refer to this factor as the "nature of the improper comment." *See Hardin*, 20 S.W.3d at 93 (referring to this factor in the context of an improper question as the "nature and form of the question").

■■■■■ As stated, the prosecutor improperly commented on Roberson's failure to testify. A proper instruction can cure the prejudicial effect of such argument in an appropriate case. *Moore*, 999 S.W.2d at 405–06; *Faison*, 59 S.W.3d at 241–42; *Barnum v. State*, 7 S.W.3d 782, 795 (Tex. App.-Amarillo 1999, pet. ref'd). The prejudicial effect of a direct comment on the accused's failure to testify may be more difficult to cure than that arising from an indirect comment on his failure to testify. *Montoya*, 744 S.W.2d at 37; *Barnum*, 7 S.W.3d at 795.

### Persistence and Flagrancy

The prosecutor persisted in her comments a second time after the court sustained Roberson's objection and instructed the jury to disregard her first comment on his failure to testify. The second comment made a more direct reference to Roberson's failure to testify than the first. The prohibition against commenting on an accused's failure to testify is not one of recent origin. *E.g., Alvilla v. State*, 32 Tex. Crim. 136, 137, 22 S.W. 406, 406 (1893). Thus, we have difficulty understanding the prosecutor's persistence in pursuing this inappropriate line of argument. *See Wilson v. State*, 938 S.W.2d 57, 62 (Tex.Crim. App.1996) (criticizing prosecutor's improper argument in another context).

### Particular Instruction Given

Upon Roberson's objection, the court instructed the jury each time to disregard the prosecutor's argument "for any purpose whatsoever." This instruction was more definitive than others we have reviewed. *E.g., Veteto*, 8 S.W.3d at 811–12 (instruction "you'll disregard" held ineffective). The court did not, however, admonish the prosecutor to cease this line of argument. *Cf. Mendoza*, 959 S.W.2d at 325 (court admonished prosecutor *sua sponte* to cease improper line of questioning).

### Weight of Evidence

We have referred to this factor as the "weight of the incriminating evidence." *See Veteto*, 8 S.W.3d at 811; *Mendoza*, 959 S.W.2d at 324. The term "incriminating evidence" infers evidence of guilt. Thus, when a prosecutor comments on a defendant's failure to testify during the guilt-innocence phase, it may be more difficult to conclude that an instruction to disregard cured the prejudicial effect of the improper comment when the State has a "weak" case than when the State presents overwhelming evidence of guilt. Conversely, in the punishment phase, the focus of this factor should be on the "weight" of the State's punishment evidence rather than on the strength of the State's evidence of guilt.

This is not to say that the evidence presented in the guilt-innocence phase has no bearing on the punishment assessed. The Code of Criminal Procedure expressly provides that a jury may consider "the circumstances of the offense for which [the defendant] is being tried" in assessing punishment. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2003). Thus, if the evidence reflects a particularly egregious crime, the jury may be inclined to assess a more severe sentence. Conversely, the evidence regarding the circumstances of the offense may persuade

the jury that punishment should be less severe.

In determining the punishment to be assessed, a jury may also consider evidence of the defendant's criminal history (adjudicated or otherwise) and other evidence regarding the defendant's character or reputation. *Id.*

The jury convicted Roberson of sexually assaulting fifteen-year-old J.S. Roberson lived with J.S.'s family from time to time. J.S. testified that he sexually assaulted her on three different occasions. Then, they put a lock on her bedroom door, and her little brother gave her a knife to defend herself. J.S. testified that he sexually assaulted her at least three more times after this. Thus, the facts of the offense itself are fairly egregious.

During the punishment phase, the State presented evidence that Roberson sexually assaulted two other females, a six-year-old and her mother. The State also offered other evidence of other extraneous offenses he had committed.

Roberson's sister and mother testified that he has no prior convictions and that they would help him in any way they could to successfully complete community supervision if the jury chose to recommend it.

### Severity of Punishment

The offense carries a punishment range of two to twenty years and a fine of up to $10,000. The jury rejected Roberson's request for community supervision and assessed a seventeen-year sentence and an $8,000 fine. Thus, the punishment was fairly close to the maximum available.

### Summary

The prosecutor repeatedly commented on Roberson's failure to testify. We cannot say with any confidence that the persistence and flagrancy with which she engaged in this inappropriate argument did not impact the punishment phase. *See Veteto,* 8 S.W.3d at 812; *Mendoza,* 959 S.W.2d at 325. We also cannot be certain that any instruction would have cured the prejudicial effect of the prosecutor's repeated comments. Thus, we conclude that the court's instruction did not effectively cure the prejudicial effect of this repetitive misconduct. Therefore, the trial court erred by denying Roberson's motion for mistrial.

We must now determine whether this error was "harmful." [2] Tex.R.App. P. 44.2; *Dinkins,* 894 S.W.2d at 356; *Waldo,* 746 S.W.2d at 753; *Montoya,* 744 S.W.2d at 37–38; *Jackson v. State,* 50 S.W.3d 579, 590 (Tex.App.-Fort Worth 2001, pet. ref'd); *Tucker v. State,* 15 S.W.3d 229, 237 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Veteto,* 8 S.W.3d at 812–13.

### Harm Analysis

Because a court's improper denial of a motion for mistrial when the State

---

**2.** We have determined that the trial court's instruction did not cure the prejudicial effect of the prosecutor's argument. It can be argued that a harm analysis in this situation is an unnecessary redundancy. In fact, the Court of Criminal Appeals has expressly noted the "seeming paradox" of requiring a harm analysis in this situation. *Waldo v. State,* 746 S.W.2d 750, 753 n. 4 (Tex.Crim.App.1988). Nevertheless, the Court further observed in *Waldo* that, even when an improper comment is "beyond cure[,] . . . it can constitute harmless error in context of the particular case."

*Id.* at 753 (citing *Montoya v. State,* 744 S.W.2d 15, 37–38 (Tex.Crim.App.1987) (opinion on reh'g)); *accord Dinkins v. State,* 894 S.W.2d 330, 356 (Tex.Crim.App.1995). Thus, we must determined whether Roberson was harmed by the denial of his motion for mistrial. *Jackson v. State,* 50 S.W.3d 579, 590 (Tex.App.-Fort Worth 2001, pet. ref'd); *Tucker v. State,* 15 S.W.3d 229, 237 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Veteto v. State,* 8 S.W.3d 805, 812–13 (Tex.App.-Waco 2000, pet. ref'd).

has commented on a defendant's failure to testify impacts the defendant's Fifth Amendment right to remain silent, we have determined that such error is one of constitutional magnitude. *Veteto*, 8 S.W.3d at 813. Rule of Appellate Procedure 44.2(a) provides:

> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

TEX.R.APP. P. 44.2(a). Because we are reviewing an error which occurred during the punishment phase, Rule 44.2(a) requires a reversal of the "judgment of punishment" unless we "determine[ ] beyond a reasonable doubt that the error did not contribute to the ... punishment." *Id.*

■ In examining the record to assess harm, we consider the traditional *Harris*[3] factors as modified by subsequent decisions:

- the source and nature of the error;
- the extent to which the State emphasized it;
- the probable collateral implications of the error;
- the weight a juror would probably place upon it, giving consideration to whether the record contains "overwhelming evidence supporting the finding in question"; and
- whether declaring the error harmless would encourage the State to repeat it with impunity.

*Shilling v. State*, 60 S.W.3d 280, 284 (Tex. App.-Waco 2001, pet. ref'd) (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim. App.1989)); *Opp v. State*, 36 S.W.3d 158, 160–61 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *Veteto*, 8 S.W.3d at 813; *see also Motilla v. State*, 78 S.W.3d 352, 357 (Tex.Crim.App.2002) (recognizing that "overwhelming evidence" is a factor to be considered in assessing harm under subdivisions (a) and (b) of Rule 44.2).[4]

■ Regarding the first factor, the State was the source of the error because the prosecutor chose to focus her argument on Roberson's failure to "admit" to the jury that he had done something wrong and wanted to change. The nature of the error invokes one of the basic tenants of criminal law, the Fifth Amendment. As to the second factor, the prosecutor's argument ignored the law and emphasized Roberson's failure to testify.

As to the third factor, the prosecutor repeated her improper comment after an objection and instruction. The courts have recognized that when a prosecutor re-emphasizes an improper argument after defense counsel objects, it compounds the prejudicial effect on the jury. *Wilson*, 938 S.W.2d at 62 (citing *Boyde v. State*, 513 S.W.2d 588, 592 (Tex.Crim.App.1974); *Bray v. State*, 478 S.W.2d 89, 90 (Tex. Crim.App.1972)). The prosecutor's repeated attempt to emphasize Roberson's failure to admit his remorse distinguishes Roberson's case from those in which the prosecutor did not repeat the improper argument. *Cf. Orona v. State*, 791 S.W.2d 125, 130 (Tex.Crim.App.1990) (the Court noted that had the prosecutor continued its

---

3. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim.App.1989).

4. As the Court observed in *Motilla*, even the *Harris* decision recognized "that overwhelming evidence can be a factor to be considered." *Motilla v. State*, 78 S.W.3d 352, 356 (Tex.Crim.App.2002) (quoting *Harris*, 790 S.W.2d at 588).

improper argument after an objection, a reversal might have been necessary).

The fourth factor focuses on the probable collateral implications of the error. The prosecutor's argument focused on Roberson's failure to "admit" that he had done something wrong. The collateral implication for the jury to draw was that Roberson should not be considered for community supervision (as a rehabilitative punishment option) because he could not be rehabilitated without first admitting he had a problem.

Fifth, we examine the weight the jury likely placed on the comment bearing in mind the strength of the State's punishment case (*i.e.*, whether the State presented "overwhelming evidence supporting the [punishment verdict]"). As we have observed, the evidence reflects a fairly egregious crime, exacerbated by the fact that Roberson sexually assaulted J.S. and others on numerous other occasions. Conversely, Roberson put on evidence that he had no prior convictions and that his family would help him as he sought rehabilitation through services he could receive on community supervision.

As we have previously stated under similar circumstances, "We do not know what might have gone through a juror's mind." *Veteto*, 8 S.W.3d at 813. Roberson asked the jury to recommend community supervision so he could be rehabilitated. The prosecutor's argument may well have caused the jury to question whether Roberson was even capable of rehabilitation.

The final factor requires us to consider the effect of holding this error harmless. The comment was not only improper but also repeated after a sustained objection and instruction. To let it go under the guise of harmless error would only encourage the State to repeat such improper arguments in the future. *See Wilson*, 938 S.W.2d at 62; *Veteto*, 8 S.W.3d at 813.

Accordingly, we cannot say beyond a reasonable doubt that the error did not contribute to Roberson's sentence. Therefore, we sustain Roberson's second point.

The judgment of conviction is affirmed. That portion of the judgment assessing punishment is reversed and this cause is remanded to the trial court for a new punishment hearing. *See* Tex.Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2003); *Barton v. State*, 21 S.W.3d 287, 290 (Tex.Crim.App.2000); *Dickson v. State*, 986 S.W.2d 799, 806 (Tex.App.-Waco 1999, pet. ref'd).

Justice GRAY, dissenting.

TOM GRAY, Justice, dissenting.

There are three portions of the majority opinion with which I disagree. Two of them relate to the majority opinion's analysis of a comment made by the prosecutor; first, whether there was error, and second, if error, was it harmless. The third portion of the opinion with which I disagree is its analysis of the admission of testimony as lay opinion rather than expert opinion. I will address the issue regarding the testimony first and then address the analysis of the comment by the prosecutor.

### Expert vs. Lay Opinion Testimony

Roberson's second issue is that the testimony of a police officer about the normal conduct of sexual assault victims was improperly admitted. Roberson argues that to be admissible the testimony must meet the requirements of Rule 702 regarding the admission of expert testimony. The State argues that it is not expert testimony and should be analyzed as lay opinion testimony under Rule 701. A majority of the court has followed the State's argument and analyzed it as lay opinion testimony.

I would analyze it as expert opinion testimony. Actually, I would assume without deciding that the admission was error, proceed directly to a harm analysis, and hold that the admission of this testimony from Lanning, if error, was harmless. TEX.R.APP. P. 42.2(b).

EFFECT OF INSTRUCTION TO DISREGARD

In its analysis of Roberson's first issue, a majority of the court determines that the prejudicial effect of an improper comment by the prosecutor was not cured by an instruction to disregard. I disagree.

First, the comment was not so blatant that an instruction could not cure the prejudicial effect, if any. *See Waldo v. State*, 746 S.W.2d 750, 753 (Tex.Crim.App.1988). The Court of Criminal Appeals has noted that they tend to find instructions to disregard improper argument to have the desired effect of removing the improper argument from the consideration of the jury in all but the most blatant cases of commenting on the defendant's failure to testify *Id.* The State was attempting to respond to Roberson's argument that he was a good candidate for probation with the concept of admitting a problem is a necessary step to changing bad habits. The prosecutor impliedly argued that because Roberson pled guilty, he was not willing to change. The argument was improper, but not a blatant comment on Roberson not testifying.

Second, the trial court's instruction was not faulty. Yes, the prosecutor was not instructed to cease her line of argument, but there is no requirement that the trial court do so. An instruction specifically informing the jury to disregard the last comment made has been held to be adequate. *See Waldo*, 746 S.W.2d at 755–756.

Third, the majority glossed over the weight of the incriminating evidence. Even if we must only consider the weight of the punishment evidence, that consideration necessarily includes the evidence of guilt. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2002). Roberson and the victim at times shared various residences with other people. They were not in a relationship with each other. Roberson sexually assaulted his victim six times between the end of 1997 and the end of 1998. When these offenses began, the victim was only 15 years old. All six times, Roberson assaulted the victim while she was asleep. After she awoke, he would stop and leave. Twice he pinned her down and held her teddy bear over her face. She struggled with him to get him to leave.

At punishment, the State introduced evidence that Roberson sexually assaulted another woman while asleep in the victim's bed. He also sexually assaulted this woman's six-year old daughter. At the time of this trial, an indictment was pending against Roberson for the assault of the daughter. Roberson also physically abused his girlfriend's two-year old daughter. The girlfriend initially denied to authorities that Roberson committed the abuse because he threatened to kill her and her daughter. Roberson continually threatened the girlfriend with harm, threatened to "shoot up" her house, and used weapons which scared her. The girlfriend stated that Roberson had a bad reputation for being peaceful and law abiding.

The State also introduced evidence that Roberson frightened, offended, and intimidated a neighbor while she was cleaning up a yard of a vacant house. Roberson yelled obscenities and made obscene gestures to the woman to such an extent that she ran home and called the police. Roberson was apprehended a short time later. Additionally, the police officer who arrested Roberson for the case at hand,

smelled the odor of burned marijuana when he arrested Roberson and believed Roberson to be under the influence of an illegal substance.

Roberson introduced the testimony of his sister and mother who said they would help him with probation if the jury would give him a chance. Roberson's sister had just completed probation for "fighting." She denied ever threatening any of the witness in the case. On rebuttal, the State brought forth two witnesses who were either threatened with death by Roberson's sister if caught lying about Roberson or who heard her threaten the victim with death if she were lying about the abuse or if Roberson was convicted.

Fourth, 17 years for this sexual assault based on the punishment evidence is not unduly severe. The maximum is 20 years. The jury did not even assess the maximum fine.

In weighing the evidence associated with each of the factors, the instruction to disregard was adequate to cure the prejudicial effect of the improper argument caused by the State to the extent that I am certain the impression produced on the minds of the jury was withdrawn. *See Waldo*, 746 S.W.2d at 754 (Tex.Crim.App. 1988). *Compare Chimney v. State*, 6 S.W.3d 681, 703–04 (Tex.App.-Waco 1999, no pet.)(trial court's instruction to disregard cured prejudicial effect of State's comment on defendant's failure to testify during argument). I would hold that the trial court did not err in denying Roberson's request for a mistrial, and no harm analysis would be necessary.

### Harm Analysis

After determining that the prejudicial effect was not cured by the instruction and therefore holding the trial court erred in failing to grant a motion for new trial, the majority conducts a harm analysis. The harm analysis is defective because it fails to fully consider "... evidence of the defendant's guilt ..." *Motilla v. State*, 78 S.W.3d 352, 357 (Tex.Crim.App.2002). The Court of Criminal appeals has recently reaffirmed: "To judge the likelihood that harm occurred, appellate courts must consider everything in the record including all the evidence admitted at trial, [and] the closing arguments, ... We hold once again that the evidence of the defendant's guilt is a factor to be considered in any thorough harm analysis." *Id.* at 358.

The majority fell into the same trap as the court of appeals in *Motilla*; its consideration of the weight of the evidence was incomplete. *Id.* at 358. The opinion glossed over evidence from the guilt/innocence phase and the punishment phase. Granted, we don't know what might have gone through the jurors' minds. *See Veteto v. State*, 8 S.W.3d 805, 813 (Tex.App.-Waco 2000, pet. ref'd). However, the evidence in this case was overwhelming in support of the jury's assessment of a lengthy prison term rather than probation. Based on this record, I have no trouble concluding beyond a reasonable doubt that the prosecutor's comments did not contribute to Roberson's punishment. Tex.R.App. P. 44.2(a). Thus, if the trial court had committed error, that error was harmless.

For the reasons as expressed herein, I respectfully dissent.