

# IN THE
# TENTH COURT OF APPEALS

———————

## No. 10-12-00123-CR

**ROGER DANE OWENS,**

                                                      **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                      **Appellee**

———————

### From the County Court at Law No. 1
### Johnson County, Texas
### Trial Court No. M200901982

———————

## MEMORANDUM OPINION

———————

Appellant, Roger Dane Owens, challenges the trial court's denials of his motion to suppress and his motion for mistrial. Specifically, in five issues, appellant complains that the trial court erred in denying: (1) his motion to suppress because the officer lacked reasonable suspicion or probable cause to initiate a traffic stop and ultimately obtain a search warrant to obtain his blood; and (2) his motion for mistrial regarding the prosecutor's questions to appellant's wife regarding an alleged prior driving-while-intoxicated ("DWI") offense. We affirm.

## I. BACKGROUND

On the evening of September 6, 2009, Texas Department of Public Safety Troopers Scott Hewitt and Charles Lindorfer were on routine traffic patrol on Industrial Boulevard in Cleburne, Texas. At approximately 7:45 p.m., the troopers observed a white Chevrolet SUV traveling eastbound on Industrial Boulevard. Suddenly, the SUV "swerved hard to the left across—almost completely across the roadway and then swerved back onto the right side of the road." This swerving attracted the attention of the troopers. As he followed the SUV, Trooper Hewitt noticed that the vehicle did not have an ordinary license plate on the rear of the vehicle. Instead, the vehicle had what appeared to be a temporary license plate in the back window. However, Trooper Hewitt testified that "the window tint on the back window obstructed the license plate. I wasn't able to see any of the characters or the state for the license plate."

Shortly thereafter, the troopers "conducted a traffic stop on the vehicle for the obstructed license plate." Trooper Hewitt identified appellant as the driver of the vehicle. Appellant explained that he had recently purchased the vehicle in Louisiana and that the license plate in the back window was temporary. He also noted that he swerved in the roadway to avoid hitting birds. While speaking to appellant, Trooper Hewitt noticed a strong odor of alcohol on appellant's breath and emanating from the vehicle. At that time, Trooper Hewitt requested that appellant exit the vehicle.

After appellant had exited the vehicle, Trooper Hewitt asked appellant where he was going. Appellant stated that he was coming from a party and that he was heading home. In addition to the alcohol on appellant's breath, Trooper Hewitt also observed

that appellant's eyes "were very red and glassy" and that appellant "shuffled his feet, he seemed to be a little imbalanced." Trooper Hewitt repeatedly asked appellant if he had been drinking, and appellant responded that he had not.

Trooper Hewitt also spoke to the vehicle's passenger, Lanford Lawrence. Lawrence acknowledged that they had a cooler in the backseat of the vehicle that contained beer. He also admitted that he had a can of Heineken beer underneath his seat. When shown the can of beer, Trooper Hewitt noted that it "was cold and wet to the touch" and about a quarter full. Based on his training and experience, Trooper Hewitt believed that appellant was intoxicated and began to administer standardized field-sobriety tests.

Trooper Hewitt administered three tests: the horizontal-gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Appellant performed poorly on all three tests. According to Trooper Hewitt, appellant exhibited four out of six clues on the horizontal-gaze nystagmus test, four out of eight clues on the walk-and-turn test, and two out of four clues on the one-leg stand test. Trooper Hewitt explained that, based on his training, "as the alcohol level in a person rises so do the—the number of clues . . . as you administer the test."

After completion of the tests, Trooper Hewitt requested that appellant take a preliminary breath test. Appellant declined. Trooper Hewitt subsequently placed appellant under arrest for driving while intoxicated because he felt that appellant "did not have the normal use of his physical and mental faculties."

Appellant was taken to a room at the Johnson County Law Enforcement Center and provided statutory DIC-24 warnings. Appellant was once again asked to provide a sample of his breath, which he refused. He also refused to voluntarily submit to a blood draw.

Thereafter, Trooper Hewitt prepared an affidavit "for a blood search warrant" and submitted it to District Judge C.C. "Kit" Cooke. After reviewing the affidavit, Judge Cooke signed a warrant authorizing law enforcement to obtain a specimen of appellant's blood. Licensed Vocational Nurse James Early conducted the blood draw, and subsequent testing revealed that appellant had a blood-alcohol level of 0.11 grams of alcohol per 100 milliliters of blood, which was over the legal limit of 0.08.

Appellant was charged by indictment with driving while intoxicated. In response, appellant filed a motion to suppress all evidence seized as a result of the traffic stop because the initial arrest and subsequent search warrant were not supported by probable cause.

On June 1, 2011, the trial court conducted a hearing on appellant's motion to suppress. Trooper Hewitt was the only witness to testify at the hearing. At the conclusion of the hearing, the trial court denied appellant's motion to suppress and made several findings of fact and conclusions of law. The case proceeded to trial.

At trial, appellant called a couple of witnesses—one being his wife, Debra Owens. Debra testified that appellant was diagnosed with solitary plasmacytoma cancer in September 2001, and that, as a result of the cancer, appellant has a large tumor on his hip that affects his gait. She also stated that appellant has hematological cancer,

dry eye, and allergies to dust. Debra opined that appellant's dry eye and allergies likely caused his eyes to be red on the day of the incident. Lawrence, appellant's friend, also testified. He noted that he and appellant were at the Winscott Ranch on the morning of the incident and that they later went to a "business/social-type luncheon" in Aledo, Texas, that afternoon. Lawrence admitted seeing appellant drink a beer when he first arrived at the luncheon. Lawrence also acknowledged that he did not follow appellant around during the luncheon; thus, Lawrence was unsure about how much appellant had drank that afternoon. Nevertheless, Lawrence did not believe that appellant was intoxicated.

After both sides rested, the jury found appellant guilty of the charged offense and assessed punishment at ninety days in jail and a $1,000 fine with a recommendation that both the fine and jail sentence be probated for two years. The trial court certified appellant's right to appeal, and this appeal followed.

## II.    MOTION TO SUPPRESS

In his first four issues, appellant complains that the trial court erred in denying his motion to suppress evidence pertaining to his arrest and the search warrant for his blood because law enforcement did not have reasonable suspicion or probable cause to initiate the traffic stop. Specifically, appellant argues that he did not violate any traffic laws, and as such, the traffic stop and all actions taken thereafter were unjustified and in violation of the Fourth Amendment of the United States Constitution. We disagree.

## A. The Stop and Arrest

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

When a trial judge makes explicit fact findings regarding a motion to suppress, an "appellate court [must first] determine whether the evidence (viewed in the light

most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

In a hearing on a motion to suppress evidence based on an alleged Fourth Amendment violation, the initial burden of producing evidence that rebuts the presumption of proper police conduct is on the defendant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *see State v. Dietiker*, 345 S.W.3d 422, 424 (Tex. App.—Waco 2011, no pet.). The defendant's burden may be satisfied by establishing that a search or seizure occurred without a warrant. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. After this showing is made by the defendant, the State assumes the burden of demonstrating that the search or seizure was conducted pursuant to a warrant or was reasonable. *Ford*, 158 S.W.3d at 492; *see Dietiker*, 345 S.W.3d at 424. Here, the record indicates that the stop was made without a warrant; thus, the State assumed the burden of proof regarding whether reasonable suspicion for the detention existed. *See Ford*, 158 S.W.3d at 492.

On appeal, Owens challenges the propriety of the initial traffic stop. The Fourth Amendment to the United States Constitution provides, in part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As a general rule, searches conducted without a warrant are deemed unreasonable unless the situation presents an exception to the warrant requirement. *Hubert v. State*, 312 S.W.3d 554, 560

(Tex. Crim. App. 2010). One such exception is the *Terry* stop. *See Terry v. Ohio*, 392 U.S.1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968). Consistent with *Terry*, a police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." 392 U.S. at 29, 88 S. Ct. at 1884; *see Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

A determination of reasonable suspicion is made by considering the totality of the circumstances. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). In *Foster v. State*, the Court of Criminal Appeals repeated the standard for warrantless traffic stops:

> A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. Specifically, the police officer must have some minimal level of objective justification for making the stop, i.e., when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances.

326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (internal quotations omitted); *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (noting that reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged in or is, or soon will be, engaging in illegal conduct).

Here, Officer Hewitt testified and the trial court's findings of fact and conclusions of law stated that appellant was stopped for an obstructed license plate, pursuant to former section 502.409 of the Texas Transportation Code. *See* Act of April 19, 2007, 80th Leg., R.S., ch. 30, § 1, 2007 Tex. Gen. Laws 28, 29 (amended 2011) (current version at TEX. TRANSP. CODE ANN. § 502.475 (West Supp. 2012)). The 2007 version of former section 502.409 of the Texas Transportation Code that was in effect at the time of this incident provided as follows, in relevant part:

> (a) A person commits an offense if the person attaches to or displays on a motor vehicle a number plate or registration insignia that:
>
> . . . .
>
> (5) has blurring or reflective matter that significantly impairs the readability of the name of the state in which the vehicle is registered or the letters or numbers of the license plate number at any time;
>
> . . . .
>
> (7) has a coating, covering, protective material, or other apparatus that:
>
>> (A) distorts angular visibility or detectability;
>>
>> (B) alters or obstructs one-half or more of the name of the state in which the vehicle is registered; or
>>
>> (C) alters or obscures the letters or numbers of the license plate number or the color of the plate.

Act of April 19, 2007, 80th Leg., R.S., ch. 30, § 1, 2007 Tex. Gen. Laws 28, 29 (amended 2011).

Appellant argues that when the traffic stop occurred, it was dark outside; thus, it is possible that Trooper Hewitt could not read the characters on the license plate based

on the lack of light outside, not the window tint. Appellant also alleges that Trooper Hewitt stopped him based on a "hunch." In addition, appellant focuses his arguments on former section 502.409(a)(5) of the Texas Transportation Code. However, appellant does not address subsection (a)(7) of former section 502.409.

The trial court concluded that appellant's "vehicle had an obstructed paper license plate." Furthermore, Trooper Hewitt testified that that appellant's vehicle had a temporary license plate and that the license plate was "inside of the vehicle in the back window." Trooper Hewitt also noted that he was unable to see any of the characters or the state for the license plate because of the dark window tint. As such, Trooper Hewitt believed that the visibility and detectability of appellant's temporary license plate was distorted and obstructed by the dark window tint on the vehicle. He also stated that the distortion and obstruction of the temporary license plate by the window tint constituted a violation of traffic laws.

Considering the totality of the circumstances, *see Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008), we conclude that the trial court did not err in determining that the traffic stop of appellant was supported by specific, articulable facts that a traffic violation had occurred. Therefore, Trooper Hewitt was authorized to stop and lawfully detain appellant under these circumstances.[1] *See id.* (citing *Ford*, 158 S.W.3d at 492)

---

[1] Relying on the Court of Criminal Appeals' decision in *Dodson v. State*, appellant seems to insinuate that his temporary license plate may have been merely faded or weather-beaten; thus, Trooper Hewitt did not have reasonable suspicion to effectuate the stop. 646 S.W.2d 177 (Tex. Crim. App. 1980), *overruled on other grounds by Black v. State*, 739 S.W.2d 240 (Tex. Crim. App. 1987). We note that the record contains no evidence indicating that appellant's temporary license plate was faded or weather-beaten. In fact, the evidence suggests that the temporary license plate likely was not faded or weather-beaten because appellant recently purchased the vehicle and the new temporary license plate was placed inside

(stating that a police officer may lawfully detain a person temporarily if there is reasonable suspicion to believe that the detained person is violating the law). Whether the time of night factored into Trooper Hewitt's inability to read the temporary license plate was a decision within the province of the trial court, especially considering it hinged upon a determination of Trooper Hewitt's credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. Thus, we must defer to the trial court's resolution of that argument. *See Neal*, 256 S.W.3d at 280; *see also Guzman*, 955 S.W.2d at 89.

**B.    The Search Warrant for a Blood Specimen from Owens**

With regard to the search warrant issued to obtain a blood specimen, appellant's argument hinges upon a finding that Trooper Hewitt lacked reasonable suspicion or probable cause to effectuate the traffic stop. And based on such a finding, appellant contends that the trial court should have suppressed the blood-test results pursuant to the fruit-of-the-poisonous-tree doctrine.

As a general rule, the "fruit of the poisonous tree" doctrine prohibits the State's use of illegally-obtained evidence. *Wong Sun v. United States*, 371 U.S. 471, 484, 487-88, 83 S. Ct. 407, 415-18, 9 L. Ed. 2d 441 (1963). Moreover, the "fruit of the poisonous tree" doctrine generally precludes the use of evidence, both direct and indirect, obtained following an illegal arrest. *See State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App.

---

the vehicle on the rear window, rather than on the exterior of the vehicle. Moreover, we point out that the *Dodson* court analyzed a prior version of former section 502.409 of the Texas Transportation Code, which, among other things, made a distinction regarding the visibility of license plates "during daylight." 646 S.W.2d at 182. The version of former section 502.409 at issue in this case does not make such a distinction. *See* Act of April 19, 2007, 80th Leg., R.S., ch. 30, § 1, 2007 Tex. Gen. Laws 28, 29 (amended 2011) (current version at TEX. TRANSP. CODE ANN. § 502.475 (West Supp. 2012)).

2008); *see also Porter v. State*, Nos. 05-10-01390-CR, 05-10-01391-CR, 05-10-01393-CR, 2012 Tex. App. LEXIS 4098, at *4 (Tex. App.—Dallas May 23, 2012, pet. ref'd) (mem. op., not designated for publication).

Here, we have previously held that the trial court did not err in concluding that appellant had violated a traffic law and that Trooper Hewitt had reasonable suspicion to effectuate the traffic stop. Furthermore, other than challenging the initial stop, appellant does not specifically attack the trial court's finding of fact and conclusion of law stating that: "[A]fter hearing and viewing all of the evidence, that under the totality of the circumstances, probable cause existed to arrest the Defendant for Driving While Intoxicated." Instead, appellant's argument pertaining to his arrest is focused on the propriety of the initial stop. Because appellant neither raises additional grounds to support his contention that his arrest was illegal nor complains about any other illegality that could possibly taint the search warrant and resulting blood-test results, we cannot say that the "fruit of the poisonous tree" doctrine operates to invalidate the search warrant and, ultimately, preclude the introduction of the blood-test results at trial. *See Wong Son*, 371 U.S. at 484, 487-88, 83 S. Ct. at 415-18; *Iduarte*, 268 S.W.3d at 550; *see also Porter*, 2012 Tex. App. LEXIS 4098, at *4.

Therefore, based on the foregoing, we cannot conclude that the trial court abused its discretion in denying appellant's motion to suppress. *See Crain*, 315 S.W.3d at 48; *Guzman*, 955 S.W.2d at 88-89. Accordingly, appellant's first four issues are overruled.

### III.   MOTION FOR MISTRIAL

In his fifth issue, appellant asserts that the trial court abused its discretion in denying his motion for mistrial. Specifically, appellant argues that the prosecutor's questioning of Debra during the punishment phase regarding whether she was aware of a prior DWI incident involving appellant when no such conviction existed required the trial court to grant his motion for mistrial.

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The trial court's denial of appellant's motion for mistrial constitutes error only if the trial court's instruction to disregard was inadequate to cure the prejudicial effect of the improper comment. *See Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); *Johnson v. State*, 83 S.W.3d 229, 231 (Tex. App.—Waco 2002, pet. ref'd). As we determine whether the instruction was adequate, we must bear in mind that an instruction is presumptively inadequate only in the most blatant cases. *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (citing *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)); *Roberson v. State*, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref'd).

The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Hernandez v. State*, 805 S.W.2d 409, 414

(Tex. Crim. App. 1990). And although not specifically adopted as definitive or exhaustive, courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect. *See Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988); *Roberson*, 100 S.W.3d at 41; *Johnson*, 83 S.W.3d at 232. These factors are as follows: "'the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction given; the weight of the incriminating evidence; and the harm to the accused as measured by the severity of the sentence.'" *Searcy v. State*, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Roberson*, 100 S.W.3d at 41).

In this case, appellant asserts that the State asked an improper question during the punishment phase of trial. Prior to the State's question, defense counsel asked Debra about whether appellant had been previously convicted of any felonies or crimes of moral turpitude in this or any other state. Debra responded that appellant had not been previously convicted of any felonies or crimes of moral turpitude. On cross-examination, the State asked whether Debra had heard "about his [appellant's] DWI from 1978 in Hunt County," to which she replied, "No." Immediately thereafter, the jury was excused from the courtroom.

Defense counsel objected to the State's question, arguing that "it's certainly inadmissible, prejudicial, extraneous conduct not reduced to a conviction." The State responded that: "I've got a TCIC showing a conviction. She can admit it or deny it and I can't really go any further unless I can prove it up further from there. But[,] I believe it's a fair question." After allowing defense counsel to ask Debra a few questions on

voir dire outside the presence of the jury, the trial court granted a request made by appellant for an instruction to disregard; however, appellant's motion for mistrial was denied. Once the jury returned, the trial judge issued the following instruction: "The jury is instructed to disregard for all purposes the previous question and answer. You are not to consider it for any—any purpose or reason."

The Court of Criminal Appeals has made it clear that a good-faith basis may rest on evidence that would not necessarily be admissible at trial, such as an offense report, investigation report, and arrest record. *See Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex. Crim. App. 1979); *Stone v. State*, 583 S.W.2d 410, 416 (Tex. Crim. App. 1979); *Love v. State*, 533 S.W.2d 6, 10 (Tex. Crim. App. 1976); *see also Murphy v. State*, 4 S.W.3d 926, 931 (Tex. App.—Waco 1999, pet. ref'd). This is because such questions "are designed not to discredit the person on whose behalf the witness is testifying, but . . . to affect the weight of the witness's testimony." *Brown v. State*, 477 S.W.2d 617, 620 (Tex. Crim. App. 1972); *see Murphy*, 4 S.W.3d at 931. The risk that the jury will consider the content of the question as substantive evidence is mitigated by the requirement that the prosecutor have a good-faith basis to believe that the incident actually occurred. *Starvaggi*, 592 S.W.2d at 328; *see Murphy*, 4 S.W.3d at 931.

After reviewing the record, we believe that the prosecutor acted in good-faith when he posed the question to Debra about appellant's alleged prior DWI. The prosecutor informed the trial court that the question was premised on the Texas Crime Information Center ("TCIC") report, which allegedly showed that appellant was involved in a prior DWI incident. Moreover, appellant proffered Debra's testimony for

purposes of establishing his eligibility for probation and to prevent the suspension of his driver's license. In doing so, defense counsel asked Debra whether appellant had previously been convicted of a felony or a crime of moral turpitude in this state or any other state. Thus, Debra's testimony placed appellant's suitability for probation, among other things, at issue.

The Texas Rules of Evidence and case law provide that a witness who testifies as to the good character of the defendant may be cross-examined on relevant specific instances of misconduct that would tend to affect the witness's opinion. *See* TEX. R. EVID. 405(a); *Murphy*, 4 S.W.3d at 932; *Lancaster v. State*, 754 S.W.2d 493, 496 (Tex. App.—Dallas 1988, pet. ref'd). Therefore, because Debra "opened the door" regarding appellant's prior criminal history in an attempt to establish his suitability for probation and to prevent the suspension of his driver's license, the State had the right to offer evidence and ask questions tending to rebut appellant's eligibility for probation and his request to not suspend his driver's license and to impeach Debra's testimony about appellant's criminal history using specific instances of misconduct if the prosecutor had a good-faith belief that the misconduct occurred.[2] *See* TEX. R. EVID. 405(a); *Murphy*, 4 S.W.3d at 932; *Lancaster*, 754 S.W.2d at 496.

Furthermore, the trial court issued an instruction to the jury prohibiting them from considering the complained-of question and answer in their deliberations. *See*

---

[2] We also note that the trial court allowed defense counsel to call appellant to the stand after sentencing to create a record for appeal. During this questioning, defense counsel specifically asked appellant about the 1978 incident, and appellant responded that he was arrested in Hunt County, Texas, in 1978, for DWI but that the charge was reduced to obstruction of a highway; thus, appellant was not finally convicted of DWI.

*Moore*, 999 S.W.2d at 405; *Wilkerson*, 881 S.W.2d at 327; *see also Johnson*, 83 S.W.3d at 23. Absent evidence to the contrary, we presume that the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."). And, appellant has not adequately shown that the instruction to disregard failed to cure the alleged prejudicial effect, especially considering, among other things, the fact that the imposed sentence was probated and his commercial driver's license was not suspended. *See Waldo*, 746 S.W.2d at 754; *Searcy*, 231 S.W.3d at 549 n.10; *Roberson*, 100 S.W.3d at 41; *Johnson*, 83 S.W.3d at 232.

Based on the foregoing, we cannot say that the trial court abused its discretion in denying appellant's motion for mistrial. *See Archie*, 221 S.W.3d at 699; *Ladd*, 3 S.W.3d at 567. Accordingly, we overrule appellant's fifth issue.

## IV.    CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed February 21, 2013
Do not publish
[CR25]