

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00421-CR

OSCAR GUERRERO                                                 APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

## FROM THE 211ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Oscar Guerrero appeals his conviction for aggravated sexual assault of a child. In two issues, Guerrero complains of the trial court's permitting a lay witness to give expert opinion testimony and of the jury instruction on good conduct time. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Amber came to the United States from Mexico and lived with her infant daughter, Emma, and a family friend, Jorge Limones.[2] Amber began living with Guerrero, whom Emma referred to as "Papa." Approximately two years later, in 2006, Amber's other daughter, Ana, came to the United States from Mexico. At the time, Ana was seven years old, and Emma was two years old. Amber testified that Ana was jealous of Emma and Guerrero's relationship.

In 2007, when Emma was about three years old, she made an outcry of sexual abuse against Limones. Amber testified that just before Emma made the outcry, she started kissing on Amber's neck at night, breathing heavily, trying to kiss Amber on the mouth, and putting her legs over Amber. When Emma did these things, she would suddenly urinate on herself. After Emma's outcry, Ana asked Amber and Guerrero why Emma was receiving so much attention. Guerrero told Ana that Emma was going through a very difficult process and not to bug her.

In 2008, when Ana was nine years old, she also made an outcry of sexual abuse against Limones. Amber testified that Ana did not exhibit the same behavior that Emma had prior to her outcry.

---

[2]To protect the anonymity of the children in this case, we will use aliases to refer to some of the individuals named herein. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

In preparation for trial against Limones, Amy Derrick, a Dallas County District Attorney's Office felony prosecutor, interviewed Ana about her allegation against Limones.[3] During the interview, Ana broke down in tears and made an outcry of sexual abuse against Guerrero. Ana said that he had "been doing things to her," such as putting his finger into her "private" and that he had done such things six or seven times. Ana said that Guerrero would tell her to go take a bath while Emma was watching television. Ana said that he would then come into the bathroom, touch her all over her body, take her to the bedroom, and put his finger inside her private area. Ana would yell, her sister would come in the room, and then Guerrero would leave. Ana said that she did not tell her mother because her mother loved Guerrero, he paid the bills, and Ana was afraid that her mother would get mad at her.

Detective Abel Lopez with the Dallas Police Department interviewed Guerrero and videotaped the interview.[4] Guerrero told Detective Lopez that he would bathe Ana, and when Detective Lopez asked why he was bathing a ten-year-old girl, Guerrero replied, "I don't know. . . . I . . . struggle to not do anything but I feel that there is something in me that is not well." Detective Lopez asked Guerrero how many fingers he put inside Ana and which part of the finger. Guerrero indicated his right index finger down to the first knuckle. Guerrero said

---

[3]Limones ultimately pleaded guilty to injury to a child.

[4]Detective Lopez testified that the north Dallas apartment where Guerrero and Amber lived was in Denton County.

that Ana had some boils on her vagina and that he used his finger to put medicating cream on them.

Dora Casas, a Dallas Children's Advocacy Center employee, testified about an interview she conducted with Ana following her outcry against Guerrero. Ana told Casas that she was nine years old the first time that Guerrero did something to her. She was asleep in the living room but woke up because she felt her clothes being pulled down. Guerrero put his finger inside her. When Guerrero heard Amber coming, he covered Ana with a blanket. Ana also told Casas about a separate occasion in the bedroom in which Guerrero asked Ana to see something, and he spread her legs apart. Ana said that Guerrero put his fingers inside her vagina, and she described something white and sticky that he took out of her and showed to her.

Guerrero's defense at trial was that Ana fabricated the allegations against both him and Limones after seeing the attention that Emma received from her outcry against Limones. Amber testified that after Guerrero was arrested, Ana told her on two separate occasions that Guerrero never did anything to her.

The jury convicted Guerrero of aggravated sexual assault of a child under the age of fourteen and assessed punishment at forty years' confinement. The trial court sentenced him accordingly.

## III. ADMISSION OF DETECTIVE LOPEZ'S TESTIMONY

In his first issue, Guerrero complains that the trial court abused its discretion by allowing Detective Lopez to express his belief about how individuals who abuse children target their victims.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement." *Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391. The appropriate inquiry is whether the court acted without reference to any guiding rules and principles. *Montgomery*, 810 S.W.2d at 380.

Texas Rule of Evidence 701 provides that a lay witness may testify in the form of opinions or inferences limited to those opinions or inferences that are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. As a general rule, "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). Even events not normally encountered by most people in daily life do not necessarily require expert testimony to be

understood. *Id.* Thus, a lay witness may be capable, due to personal experience and knowledge, of expressing an opinion on a subject outside the realm of common knowledge. *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.*

In this case, the following exchange occurred between the prosecutor and Detective Lopez on direct examination:

Q. Obviously, in this particular instance, we have a scenario where you have one child saying more than one individual has sexually abused her. Correct?

A. Yes.

Q. Is that something that unfortunately you encounter with some regularity in your job?

A. Yes, we do.

Q. Detective, explain for me in your experience how that happens or why that is.

A. In the cases that I have personally been involved in and helped other detectives in my unit be involved in, usually what happens is when there's a second or a third suspect that abuses a child, it seems that they find a weakness or they take the previous abuse as a weakness in the child. And my experience has been that they take advantage of that weakness.

Q. Has it been your experience that—and just to kind of follow up on what you just said, has it been your experience that individuals who sexually abuse children are fairly specific in which children they target?

6

[DEFENSE]: Objection, Judge. There's been no showing that he's an expert on psychology or the therapy of child abuse victims.

THE COURT: Sustained.

. . . .

Q. And based on that training and experience over the last seven years, do you have an opinion as to how individuals who target children—or abuse children target those particular children?

[DEFENSE]: Judge, same objection. He's—he's—has a lot of experience as a policeman, as an interrogator. Still, he's not showing any expertise relating to the psychology or any of the therapeutic issues with the child.

THE COURT: He can offer his lay opinion on the subject. Overruled.

Q. Do you have an opinion on that, detective?

A. Yes, sir, I do.

Q. Would you please tell me what that is.

A. *Again, in investigating these cases and especially in talking to the suspects in the cases, again, it's—it's—it becomes apparent during my interviews that they look for those weaknesses. Even though sometimes they don't actually state that, but just based on statements that they make, it does become apparent that they look for weaknesses in the victims.* [Emphasis added.]

Detective Lopez later opined that Guerrero knew of Ana's vulnerabilities and prior sexual assault allegations against Limones and that Guerrero targeted those weaknesses.

Detective Lopez testified that he had nearly seven years of experience as a child abuse detective and that part of his job is to investigate child abuse allegations and interview people charged with sexual abuse of children.

7

Detective Lopez said that he is trained on how to investigate and interrogate child abusers and that he has personally dealt with hundreds of child abuse cases and has interviewed the perpetrators on hundreds of occasions.

Detective Lopez's testimony established that he possessed extensive practical experience as a child abuse detective and that, due to his personal experience and knowledge, he was capable of expressing an opinion of how child abusers target children. *See id.*; *Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.); *Roberson v. State*, 100 S.W.3d 36, 39 (Tex. App.— Waco 2002, pet. ref'd); *see also Thomas v. State*, 916 S.W.2d 578, 580–81 (Tex. App.—San Antonio 1996, no pet.) (noting that a police officer's personal knowledge may come from past experience). Further, his testimony was not based on a scientific theory and did not require significant expertise to interpret. *See Osbourn*, 92 S.W.3d at 537; *Scott v. State*, 222 S.W.3d 820, 828–29 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Having examined the entirety of Detective Lopez's testimony, we conclude that the trial court did not abuse its discretion by admitting his testimony as lay opinion testimony under Rule 701. *See* Tex. R. Evid. 701. We overrule Guerrero's first issue.

### IV. ISSUANCE OF STATUTORILY-MANDATED JURY CHARGE

In his second issue, Guerrero argues, as he did at trial, that the trial court's charge to the jury concerning the possibility of good conduct time "[did] not fit within the constitutional safeguard of section 11(a) of the Texas [c]onstitution and

therefore" violated the separation of powers doctrine of, and his right to due course of law under, the Texas constitution.[5]

In crafting its charge to the jury at the punishment phase of trial, a trial court is bound to comply with the mandatory language of article 37.07, section 4 of the Texas Code of Criminal Procedure.  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (West Supp. 2012).  That article requires that the trial court must inform the jury of the existence and mechanics of parole law and good conduct time.  *Id.*  The overall purpose of the instructions is to inform jurors of these concepts as a general proposition, but the instructions clearly prohibit the jury from considering how the concepts of "good conduct time" and parole might be applied to any particular defendant.  *Luquis*, 72 S.W.3d at 360.

A person convicted of certain enumerated offenses (including the offense of aggravated sexual assault of a child), however, is not eligible for release on mandatory supervision, regardless of how much good conduct time he might accrue; his good conduct time does not make him eligible for parole any sooner than he would be without the good conduct time credits. *See* Tex. Gov't Code Ann. § 508.149(a) (West 2012); Tex. Penal Code Ann. § 22.021(a)(1)(B), (e) (West Supp. 2012); *Luquis*, 72 S.W.3d at 362.  Thus, when the jury has found

---

[5]Guerrero made no distinction between his rights under the Texas and federal constitutions; therefore, these rights may be treated as the same in this context.  *See Luquis v. State*, 72 S.W.3d 355, 364 (Tex. Crim. App. 2002).

the defendant guilty of one of the offenses set forth in government code section 508.149(a), the portion of the statutorily-mandated jury charge discussing good conduct time only marginally applies to that defendant. *See Luquis*, 72 S.W.3d at 362. This has led some defendants to argue that the jury instruction on good conduct time is a misstatement of the law as it applies to them and is therefore a violation of due process rights; however, this argument has been rejected by the court of criminal appeals and this court. *See id.* at 365 n.29; *see also, e.g.*, *Sanders v. State*, 255 S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding article 37.07, § 4(a) charge did not violate appellant's due process rights); *Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref'd) (same).

Guerrero recognizes that the court of criminal appeals has held that article 37.07, section 4(a) is constitutional under the due course of law provision of the Texas constitution and the due process of law provision of the United States Constitution. *Luquis*, 72 S.W.3d at 362–64, 368. Guerrero argues, however, that article 37.07, section 4(a), as applied to him, does not fall within the constitutional safeguard of article IV, section 11(a) of the Texas constitution and is unconstitutional for the reasons stated in *Rose v. State*, 752 S.W.2d 529 (Tex. Crim. App. 1987) (op. on reh'g). In *Rose*, the court of criminal appeals held that article 37.07, section 4 violated the separation of powers and the due course of law provisions of the Texas constitution. 752 S.W.2d at 552–53. Since then, however, Texas citizens voted to amend article IV, section 11(a) of the Texas

10

constitution to explicitly authorize the Texas legislature to enact "laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense." *See* Tex. Const. art. IV, § 11(a); *Luquis*, 72 S.W.3d at 361 (noting that article IV, section 11(a) was amended "presumably in reaction to this Court's decision in *Rose*"); *see also Edwards v. State*, 807 S.W.2d 338, 340 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (holding that the constitutional amendment eliminated "the *Rose* issue").

Because the article 37.07, section 4(a) jury instruction neither violated Guerrero's right to due course of law nor constitutes a separation of powers violation, the trial court did not err by including it in its jury charge. We overrule Guerrero's second issue.

## V. CONCLUSION

Having overruled both of Guerrero's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 25, 2012