

IN THE
TENTH COURT OF APPEALS

No. 10-11-00214-CR

MICHAEL BLAKENEY,

                                                              Appellant

 v.

THE STATE OF TEXAS,

                                                              Appellee

From the 66th District Court
Hill County, Texas
Trial Court No. 36382

MEMORANDUM OPINION

A jury found Appellant Michael Charles Blakeney guilty of the offense of unauthorized use of a motor vehicle, and the trial court assessed his punishment, enhanced by previous felony convictions, at eleven years' confinement. This appeal ensued. We will affirm.

### Jury Charge

In his first issue, Blakeney contends that the trial court erred in denying his requested jury charge. Blakeney submitted the following proposed jury charge

language in writing to the trial court: "If the State is to prove the accused's guilt as a party, it must first prove the giult [sic] of another person as the Primary actor. *Barns* [sic] *v. State*[,] 62 S[.]W[.]3d 288, 296 [(Tex. App.—Austin 2001, pet. ref'd) (]citing *Richardson v. State*[,] 879 S[.]W[.]2d 874, 882 (Tex. Crim. App. 1993)[)]." This statement would presumably be added to the abstract portion of the charge. Blakeney also requested on the record that the charge contain "extended sentences that the agreement, if any, must be before or contemporaneous with the criminal event and that the evidence must show at the time of the commission of the offense the parties were acting together, each doing some part of the execution of the common design." These "extended sentences" also appear to be proposed additions to the abstract portion of the charge. The trial court adopted some of the proposed language and rejected or overruled the remaining portion of Blakeney's proposal.

The jury charge ultimately defined the law of parties in the abstract portion of the charge as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The application paragraph of the charge stated:

Now if you find from the evidence beyond a reasonable doubt that . . . the defendant, MICHAEL CHARLES BLAKENEY did then and there intentionally or knowingly operate one (1) motor-propelled vehicle, to-wit: a John Deere Tractor, knowing that he did not have the effective consent of the owner, Paula Quisenberry, you will find the defendant, MICHAEL CHARLES BLAKENEY, guilty of unauthorized use of a motor vehicle as alleged in the indictment, or now if you find from the evidence beyond a reasonable doubt that . . . the defendant, MICHAEL CHARLES BLAKENEY, with the intent to promote or assist the commission of the offense of unauthorized use of a motor vehicle from Paula Quisenberry, solicited, encouraged, directed, aided or attempted to aid Neil Gormley in the operation of the John Deere tractor, without consent of the owner, Paula Quisenberry, you will find the defendant MICHAEL CHARLES BLAKENEY guilty as a party, as that term is hereinbefore defined, of unauthorized use of a motor vehicle as alleged in the indictment.

Blakeney argues that he was entitled to greater clarification of the "parties charge." He states that the charge as given did not provide sufficient guidance to the jury.

A claim of jury-charge error is reviewed using the procedure set out in *Almanza*. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). The first step is to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Only if we find error, do we then analyze that error for harm. *Id.*

Article 36.14 of the Code of Criminal Procedure requires that a trial court provide a jury charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *rev'd on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). The abstract portion of the charge tracked the applicable statutes regarding the

law of parties. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2) (West 2011). There is nothing incorrect or misleading with this language. Thus, it was not error for the trial court to refuse a more specific instruction on the law of parties in the abstract portion of the charge. *See Dorsey v. State*, 940 S.W.2d 169, 173 (Tex. App.—Dallas 1996, pet. ref'd) (concluding that similar charge instructed jurors that before defendant could be convicted as a party they would have to conclude beyond a reasonable doubt that some other person actually committed the underlying offense); *see also Ramirez v. State*, No. 10-10-00163-CR, 2011 WL 2937468, at *2-3 (Tex. App.—Waco Jul. 13, 2011, pet. ref'd) (mem. op., not designated for publication). We overrule Blakeney's first issue.

**Curative Effect of Instruction**

In his second issue, Blakeney contends that the trial court's instruction to disregard a comment concerning his post-arrest silence was not specific enough to cure its prejudicial effect and that the trial court should thus have granted a mistrial. The following exchange took place while Hill County Sheriff's Department Deputy James McClanahan was testifying:

> Q [By prosecutor]   Okay. And did you attempt to make -- or take a statement from either of the men?
>
> A      Neither one of them I did. They were read their rights, and I was -- and they were asked at that time if they wished to discuss any of it and they chose not to. So there was no statement taken from them at that time.
>
> [Defense counsel]:   Objection, Your Honor.   He was commenting on the defendant's silence.
>
> THE COURT:   All right.   The last part of the response doesn't appear to be responsive. However, the part of the response that is

responsive about neither of them making a statement, that is admitted. All right. Sustained in part; overruled in part.

[Defense counsel]: I would ask that the jury be asked to disregard that statement.

THE COURT: All right. The last part you will be so instructed. Proceed.

[Defense counsel]: And then I would ask for a mistrial, Your Honor.

THE COURT: Denied.

We review a trial court's denial of a motion for mistrial for abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The trial court's denial of Blakeney's motion for mistrial constitutes error only if the court's instruction to disregard was inadequate to cure the prejudicial effect of the improper comment. *See Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); *Johnson v. State*, 83 S.W.3d 229, 231 (Tex. App.—Waco 2002, pet. ref'd). As we determine whether the instruction was adequate, we must bear in mind that an instruction is presumptively inadequate only in the most blatant cases. *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (citing *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995)); *Roberson v. State*, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet. ref'd). Although not specifically adopted as definitive or exhaustive, the courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect. *See Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988); *Roberson*, 100 S.W.3d at 41; *Johnson*, 83 S.W.3d at 232. They are as follows: "the nature of the [improper comment]; the persistence of the prosecutor; the flagrancy of the violation; the particular instruction

given; the weight of the incriminating evidence; and the harm to the accused as measured by the severity of sentence." *Searcy v. State*, 231 S.W.3d 539, 549 n.10 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Roberson*, 100 S.W.3d at 41).

*Nature of the Improper Comment*

Blakeney acknowledges that the nature of the improper comment made by Deputy McClanahan is not such that an instruction to disregard can never cure it. *See Waldo*, 746 S.W.2d at 754.

*Persistence and Flagrancy*

Unlike the repeated improper comments in *Veteto v. State*, 8 S.W.3d 805, 811 (Tex. App.—Waco 2000, pet. ref'd), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008), the State did not persistently or flagrantly pursue an improper line of questioning. In fact, the State immediately passed the witness after Blakeney's motion for mistrial was denied.

*Particular Instruction Given*

The crux of Blakeney's argument on this issue involves the particular instruction given. Blakeney states in his brief, "The sustained portion of the statement by the testifying officer . . . was not easily distinguishable. Therefore, the unspecific instruction to disregard could not cure the prejudicial effect of the comment." To support this argument, Blakeney cites *Veteto*, in which this Court stated, "[B]ased upon the facts and circumstances presented by this record, [the instruction, 'You'll disregard,'] was not particularly effective in curing the prejudice created by the State." *Id.* at 812. But as just stated, the "facts and circumstances" in *Veteto* were that the State

"persistently and flagrantly pursued an improper line of questioning." *Id.* at 811. Such was not the case here. Under the circumstances of this case, we cannot conclude that the instruction that was given was inadequate. *See Waldo*, 746 S.W.2d at 756 (concluding "[j]ury is instructed to disregard the last comment of the witness" was adequate instruction). Furthermore, we note that Blakeney did not request a more specific instruction before moving for a mistrial.

*Weight of the Evidence*

The question at trial was whether Blakeney operated the vehicle or solicited, encouraged, directed, aided or attempted to aid Neil Gormley in the operation of the vehicle. Defense witness Cheryl Chaney testified that on March 25, 2010, she, Blakeney, and Neil Gormley were all at a friend's house when Gormley asked Blakeney for a ride home. Chaney wanted to go for a ride, so the three left the friend's house in Blakeney's truck at about 1:30 or 2:00 a.m. Blakeney's truck subsequently got stuck in the mud on a county road. It was cold, and they could not get a signal on a cell phone, so they went to sleep. When Chaney woke up, Blakeney was still asleep in the truck. Chaney then saw Gormley coming down the road on a tractor. Gormley hit the tailgate and bed of Blakeney's truck with the tractor, which woke up Blakeney. Blakeney then got out of the truck and started yelling at Gormley. The tractor had put a hole in Blakeney's truck right beside the gas tank. Blakeney then began walking up a hill toward a gas well to get help and to try to get a signal on his cell phone. When Blakeney left, Gormley was trying to get the tractor, which was now also stuck, out of the mud, but when he could not move it, he got back into the truck with Chaney. Chaney never saw Blakeney get

onto the tractor or try to move the tractor in any way.  Gormley was the only one who got into the cab of the tractor.

State's witness Charles Ellis testified otherwise.  Ellis testified that he operates and manages gas leases for Devon Energy and that, on March 25, 2010, he had gone to work on a gas well that belonged to either Gene Harris or his daughter's family (the Quisenberrys).  When Ellis got to the well at about 7:30 a.m., he noticed both a pickup truck and a tractor stuck in the mud "down below."  At first, Blakeney was inside the tractor rocking it back and forth, raising and lowering the fork, revving the motor, and trying to get it unstuck and out of the ditch.  Blakeney then got down off the tractor and another man got in to drive it.  Blakeney then climbed through the fence and walked up to where Ellis was.  Blakeney asked Ellis if he could give him a ride, but Ellis refused.  Ellis asked if Blakeney was the landowner and how he had gotten stuck.  Blakeney replied that he had been out drinking and had gotten the pickup stuck.  Blakeney looked like he had not had much sleep and smelled of alcohol.  Ellis then asked Blakeney whose tractor it was and how he had gotten it.  Blakeney pointed in the direction of the Quisenberrys' place and said that "we" had gone up and gotten it.  Blakeney asked Ellis once again for a ride, but Ellis again refused.  Ellis then asked Blakeney once again how he had gotten the tractor, and Blakeney just walked away from him.

Although Ellis was the only person to testify that he actually witnessed Blakeney operating the tractor, the jury was also charged on the law of parties.  Thus, the jury could have convicted Blakeney of the offense of unauthorized use of a motor vehicle

without finding that he operated the tractor if the jury found that, with the intent to promote or assist the commission of the offense of unauthorized use of a motor vehicle from the tractor's owner Paula Quisenberry, Blakeney solicited, encouraged, directed, aided or attempted to aid Gormley in the operation of the tractor, without consent of the owner. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2), 31.07(a) (West 2011).

Jose Reyes, a ranch hand who had worked for Mr. Harris/the Quisenberrys for six or seven years, testified that on the morning of March 25, 2010, he met Blakeney at the door of the barn where the tractors are kept. Blakeney told him that he needed help getting a truck and a tractor out of a ditch because they were stuck. Reyes replied that he could not help him because the tractors did not belong to him. Blakeney nevertheless stated that if Reyes would just help him with the big tractor, he would be able to pull out the truck and the tractor that he had already taken. Reyes then asked Blakeney if he already had a tractor over there. Blakeney replied, "Yes, I took it last night." Reyes then asked Blakeney who had lent him the tractor. Blakeney replied that he paid $50 to a friend named Jose who had been riding with him. But Reyes said that there was no one else on the ranch named Jose except for him. Reyes pointed Blakeney toward the office and told him to ask his boss for help, and if his boss agreed, he would help Blakeney. Ms. Quisenberry later told Reyes that Blakeney never arrived at the office. Reyes stated that he did not give Blakeney permission to take the tractor, and although Blakeney offered him money to borrow a second tractor, Reyes did not lend a tractor to him. This testimony supports Blakeney being convicted as a party to the offense.

The totality of the evidence, other than Chaney's testimony, thus supports the jury's conviction of Blakeney for unauthorized use of a motor vehicle and supports the conclusion that the improper comment was not "so detrimental to [Blakeney's] defensive posture as to suggest the impossibility of removing it from the jurors' minds." *See Waldo*, 746 S.W.2d at 757.

*Severity of Punishment*

Blakeney was convicted of the state jail felony offense of unauthorized use of a motor vehicle, which was enhanced to a second degree felony because of Blakeney's previous felony convictions. *See* TEX. PENAL CODE ANN. § 12.425 (West Supp. 2012), § 31.07. Punishment for a second-degree felony is imprisonment for two to twenty years and a fine of up to $10,000. *Id.* § 12.33 (West 2011). Blakeney's punishment was eleven years' imprisonment and no fine. Considering the nature of the offense committed along with Blakeney's previous felony convictions, we cannot conclude that the brief improper comment increased the severity of the sentence.

*Summary*

The nature of the improper comment made by Deputy McClanahan is not such that an instruction to disregard can never cure it. The violation was not flagrant, and the State did not persist in its questioning on the subject. Under the circumstances of this case, the particular instruction given was adequate. Although one defense witness testified otherwise, the totality of the evidence supports the jury's conviction of Blakeney. And considering the nature of the offense committed along with Blakeney's previous felony convictions, we cannot conclude that Deputy McClanahan's brief

improper comment increased the severity of Blakeney's sentence. Therefore, we conclude that the trial court's instruction cured any prejudicial effect caused by the improper comment concerning Blakeney's post-arrest silence and that the trial court did not abuse its discretion in denying the motion for mistrial. We overrule Blakeney's second issue.

Having overruled both of Blakeney's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed November 15, 2012
Do not publish
[CR25]