

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-08-00117-CR

MARK DERICHSWEILER                                                       APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## OPINION ON REMAND

----------

### I. INTRODUCTION

Appellant Mark Derichsweiler perfected an appeal of his conviction and forty-seven-year sentence for felony driving while intoxicated (DWI).  In our prior opinion in this case, we sustained Derichsweiler's first point, in which he argued that the trial court erred by denying his motion to suppress because the arresting officer lacked reasonable suspicion to stop him.  *See Derichsweiler v. State*, 301 S.W.3d 803, 812–13 (Tex. App.—Fort Worth 2009), *rev'd*, 348 S.W.3d 906 (Tex.

Crim. App. 2011), *cert. denied*, 132 S. Ct. 150 (2011). However, the court of criminal appeals reversed our decision and remanded the case for us to consider Derichsweiler's remaining points that we did not address in our original opinion. *See Derichsweiler*, 348 S.W.3d at 917–18. For the reasons stated below, we overrule those points and affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Derichsweiler for felony DWI. The indictment alleged two prior DWI convictions and two enhancement convictions. After a hearing on Derichsweiler's motion to suppress, the trial court denied the motion.

The case was tried to a jury. At trial, the arresting officer, Lewisville Police Officer Wardel Carraby testified that when he approached Derichsweiler's car, he smelled a strong odor of alcoholic beverages coming from the vehicle and began to investigate a possible DWI. Officer Carraby testified that he attempted to administer field sobriety tests on Derichsweiler and that Derichsweiler "just stood there and looked at [Officer Carraby] as if he was confused." Officer Carraby testified that he arrested Derichsweiler for DWI, obtained a warrant to have Derichsweiler's blood drawn, and drove Derichsweiler to the hospital, where phlebotomist Amy Alderman drew his blood. Alderman testified that she drew Derichsweiler's blood and sealed the blood vials.

The State called Angela Springfield, the chief toxicologist with the Tarrant County Medical Examiner's Office. On voir dire outside the jury's presence, Derichsweiler established that Springfield did not personally conduct the blood

2

exam analysis in this case. Derichsweiler objected to her testimony "under *Coit* . . . unless she actually conducted the test," and the trial court overruled the objection. Derichsweiler also objected to Springfield's retrograde extrapolation testimony, and the trial court overruled that objection as well. Before the jury, Springfield testified that Derichsweiler's blood alcohol level when his blood was drawn was .09. Applying retrograde extrapolation, she testified that Derichsweiler's blood alcohol level would have been around .15 to .19 when he was driving, or about two to two and a half times the legal limit.

The jury found Derichsweiler guilty of DWI, found the sentencing enhancement allegations true, and assessed punishment of forty-seven years in prison. The trial court sentenced him accordingly.

### III. ADMISSION OF TOXICOLOGIST'S TESTIMONY AND TOXICOLOGY REPORT

In his second point, Derichsweiler argues that the trial court erred by allowing Dr. Springfield, the toxicologist, to testify concerning the results of her office's toxicology test because she did not personally conduct the test. Derichsweiler argues that her testimony about the report was inadmissible hearsay and that it violated his right to confrontation.

### A. Hearsay: Assuming Error, It Was Harmless

When the State offered Dr. Springfield's testimony, Derichsweiler made the following objection:

> [DEFENSE COUNSEL]: Your Honor, we would object under *Coit* that she didn't perform these tests; and, therefore, they're not admissible.

3

THE COURT: I understand your objection.  It's overruled.

On appeal, Derichsweiler argues that although trial counsel said "*Coit*," he was referring to the well-known case *Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1990), in which the court of criminal appeals held that the report of a nontestifying Texas Department of Public Safety (DPS) chemist was inadmissible hearsay to which the hearsay exceptions of rule 803(8)(B) and 803(6) did not apply.[1]

Rule of evidence 803(8)(B) provides that records of public offices are not hearsay when they set forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel."  Tex. R. Evid. 803(8)(B).  The *Cole* court held that the DPS chemist was "law enforcement personnel"; thus, his report did not fall within rule 803(8)(B)'s hearsay exception.  839 S.W.2d at 809–10.  In reaching its conclusion, the court employed a two-prong test, asking (1) whether the reports were objective, routine, scientific determinations of an unambiguous factual nature prepared by

---

[1]The State argues that by citing *Coit* instead of *Cole* in his trial court objection, Derichsweiler failed to preserve his argument based on *Cole* for appeal.  We disagree.  His complaint to the trial court was sufficiently specific to apprise the judge of its basis—that Dr. Springfield did not perform the lab tests— even if he misstated the name of the case that he relied on, the trial judge understood his complaint, and his complaint on appeal is essentially the same. "'Straightforward communication in plain English will always suffice'" to preserve error.  *Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

officials with no inherent motivation to distort the results and (2) whether the relevant tests were conducted in an adversarial context. *See id.* at 808–09.

In *Garcia v. State*, the court of criminal appeals held that unlike the DPS chemist in *Cole*, "as a general rule, medical examiners are not considered 'other law enforcement personnel' under rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports." 868 S.W.2d 337, 342 (Tex. Crim. App. 1993). The court employed the two-prong *Cole* test and concluded that while a medical examiner's reports *may* be used in a criminal prosecution, they are generally prepared by officials with no motive to fabricate the results of the reports. *Id.* The court explained that "a medical examiner's office is not, as a general rule, such a uniquely litigious and prosecution-oriented environment as to create an adversarial context." *Id.*

Here, we need not decide whether rule 803(8)(B)'s hearsay exception for public records applies to a medical examiner's office when it prepares a toxicology report because, even assuming the exception does not apply and that the trial court abused its discretion in admitting the report or Dr. Springfield's testimony over Derichsweiler's hearsay objection, any error was harmless.

Because the erroneous admission of inadmissible hearsay is not constitutional error, we apply rule 44.2(b) and disregard the error if it did not affect Derichsweiler's substantial rights. Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Moon v. State*, 44 S.W.3d 589, 594 (Tex. App.—Fort

5

Worth 2001, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Derichsweiler was charged with driving while intoxicated by not having the normal use of mental or physical faculties (the impairment definition) or by having an alcohol concentration of 0.08 or more (the per se definition). *See* Tex. Penal Code Ann. § 49.01(2) (West 2011) (defining intoxication); *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). The State was required to prove only one of these definitions of intoxication. *See Bagheri v. State*, 119 S.W.3d 755, 762

(Tex. Crim. App. 2003). The jury charge contained both definitions, and the State relied on both definitions at trial.

Officer Carraby testified that he smelled a strong odor of alcoholic beverages coming from Derichsweiler's vehicle; that Derichsweiler had a difficult time answering simple questions such as where he was coming from, whether he had anything to eat or drink, and whether he was taking medication; that Derichsweiler "just stood there" and looked confused when Officer Carraby attempted to administer field sobriety tests on him; that his speech was slurred and his eyes were heavy, red, and glassy; that he told Officer Carraby that he could not safely drive home; and that Officer Carraby saw a bag containing approximately four beer cans in the back of Derichsweiler's vehicle. Officer Carraby testified that he was of the opinion that Derichsweiler had lost the normal use of his mental and physical faculties due to the introduction of alcohol into the body. The jury watched a videotape of the stop. Derichsweiler's girlfriend Mary Bowers testified that she had viewed the videotape of Derichsweiler's stop and that she believed he was intoxicated; she further testified that he had told her that he had consumed fifteen alcoholic drinks that day.

During closing arguments, the State mentioned the breath test results but also said that they were "just icing on the cake" because "[t]he videotape is enough. . . . You've all seen intoxicated people before, and that's what you see on [the videotape]."

7

We conclude that, in the context of the entire case against Derichsweiler, any error in admitting, over Derichsweiler's hearsay objection, the toxicology report or Dr. Springfield's testimony regarding it did not have a substantial or injurious effect on the jury's verdict and did not affect Derichsweiler's substantial rights. *See King*, 953 S.W.2d at 271. Thus, even assuming error, we disregard it. *See* Tex. R. App. P. 44.2(b). We overrule this portion of of Derichsweiler's second point.

### B. Confrontation Clause: Objection Not Preserved

In the last paragraph of his second point, Derichsweiler argues that if "Dr. Springfield didn't perform the tests, then the person who did was not subject to cross[-]examination" in violation of the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). Derichsweiler's trial objection mentioned neither the Confrontation Clause nor *Crawford*, and we cannot infer a Confrontation Clause complaint from his *"Coit"* objection at trial. We therefore hold that Derichsweiler failed to preserve this complaint for our review. *See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). We overrule the remainder of Derichsweiler's second point.

### IV. PUNISHMENT ENHANCEMENTS

In his third, fourth, and fifth points, Derichsweiler argues that the trial court erred by refusing his request for a punishment charge that tracked the indictment's enhancement paragraphs; that the State failed to prove that he

8

committed the offense alleged in the second enhancement paragraph after the conviction alleged in the first enhancement paragraph became final; and that the trial court erred by submitting a charge that failed to instruct on an allegation in the indictment required to be proved in accordance with penal code section 12.42(d). *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2011).

## A. The Indictment, the Charge, and the Verdict

Derichsweiler's arguments arise from a defect in the indictment's enhancement paragraphs. The first enhancement paragraph alleged that Derichsweiler had been convicted of felony DWI in October 2003. The second enhancement paragraph alleged that "after the [2003] conviction . . . was final," Derichsweiler committed the felony offense of aggravated assault of a peace officer and was convicted in October 1998.[2] Obviously, the 2003 conviction was not final before Derichsweiler committed the 1998 offense.

The punishment charge omitted any reference to either enhancement conviction having become final before Derichsweiler committed the offense underlying the other enhancement conviction. Instead, the charge's application paragraphs instructed the jury to find the enhancement allegations true if it found beyond a reasonable doubt that the enhancement conviction in question became final before Derichsweiler committed the offense for which he was on trial—the

---

[2]Derichsweiler pleaded guilty to this offense in 1991 and received a ten year sentence probated for ten years; a judgment revoking his probation was signed in 1998 (hereinafter referred to as the 1998 assault on a peace officer offense).

9

2006 felony DWI. The charge further instructed the jury that if it found both enhancement paragraphs true, it was to assess a punishment of twenty-five to ninety-nine years' or life confinement.

The verdict form signed by the presiding juror introduced another wrinkle. The form states that the jury found both enhancements true, found that Derichsweiler had been convicted of the 2003 DWI before he committed the 2006 DWI, and found that Derichsweiler had been convicted of the 1998 assault on a peace officer before he committed the 2003 DWI. Thus, the verdict form recited the enhancement convictions in the correct sequence, but it failed to recite that the 1998 conviction was final before the commission of the 2003 DWI.

At trial, Derichsweiler objected that the charge did not track the indictment, i.e., that the charge did not require the jury to find that the 2003 conviction became final before Derichsweiler committed the 1998 assault on a peace officer, the impossibility alleged by the indictment. The trial court at first appeared to sustain the objection, saying, "Why don't we go ahead and fix that," but the court later explicitly overruled the objection.

The punishment-phase evidence shows that the 1998 conviction was final before Derichsweiler committed the 2003 DWI and that the 2003 DWI conviction was final before Derichsweiler committed the 2006 felony DWI, and Derichsweiler does not argue otherwise.

## B. The Law of Enhancements

Penal code section 12.42(d) provides as follows:

10

> [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code Ann. § 12.42(d). The State must give a defendant notice in the indictment or other pleading that it will seek the enhanced range of punishment. *Brooks v. State*, 957 S.W.2d 30, 33–34 (Tex. Crim. App. 1997). "The purpose of an enhancement allegation is to provide the accused with notice of the prior conviction relied upon by the State." *Coleman v. State*, 577 S.W.2d 486, 488 (Tex. Crim. App. 1979); *Bevins v. State*, 422 S.W.2d 180, 181 (Tex. Crim. App. 1967).

Because the purpose of the enhancement paragraphs is to provide notice, "'it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense.'" *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (quoting *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986)). For example, the date on which the prior convictions became final need not be alleged. *Hollins v. State*, 571 S.W.2d 873, 876 n.1 (Tex. Crim. App. 1978). Nor is it necessary to allege the sequence of the prior convictions. *See Jingles v. State*, 752 S.W.2d 126, 129 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Rather, the notice must enable the accused "to find the record and

11

make preparation for a trial of the question whether he is the convict named therein." *Brown v. State*, 636 S.W.2d 867, 868 (Tex. App.—Fort Worth 1982, no pet.).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001). This principle applies equally to the affirmative findings necessary to sustain the imposition of an enhanced punishment; the sufficiency of the evidence of the enhancements should be measured by the hypothetically correct jury charge for the enhancement. *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000) (applying hypothetically correct jury charge to drug-free zone enhancement); *see Sims v. State*, 84 S.W.3d 768, 779 (Tex. App.—Dallas 2002, pet. ref'd).

Generally, the State must prove enhancement allegations as alleged in the indictment. *Ex parte Augusta*, 639 S.W.2d 481, 485 (Tex. Crim. App. 1982), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999). But in *Gollihar*, the court of criminal appeals—relying on *Malik*'s hypothetically-correct-jury-charge rule, which the court extended to punishment-phase enhancement allegations in *Young*—held that a hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances between the indictment and the evidence. 46 S.W.3d at 256. A variance

12

between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Id.* at 257. When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial. *Id.*[3]

### C. No Error in Refusing to Track Indictment's Language

Because it was not necessary for the State to allege the dates on which the enhancing convictions became final or the sequence of the enhancing convictions, the indictment's nonsequitur allegation that the 2003 DWI conviction was final before the commission of the 1998 assault is immaterial. The enhancement allegations recited the counties, courts, cause numbers, and dates of conviction for both enhancements; this was sufficient to enable Derichsweiler to find the record and prepare for trial regarding whether he is the convict named in the convictions. *See Brown*, 636 S.W.2d at 868. Because the State was not required to allege the sequence of convictions in the indictment, the trial court did not err by refusing to track the indictment's unnecessary and defective sequence allegation in the jury charge. We note that Derichsweiler does not argue that the trial court erred by failing to instruct the jury that it could find the enhancements

---

[3]The *Gollihar* court stated a second element of the fatal variance test: whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* Because enhancement allegations do not implicate jeopardy—that is, allegations used to enhance a current prosecution may also enhance a later prosecution for a different offense—this second element is inapplicable to our analysis.

13

true only if it found that the 1998 conviction was final before Derichsweiler committed the 2003 DWI, as required by penal code section 12.42(d); he argues only that the trial court erred by failing to conform the charge and verdict form to the sequence of convictions alleged in the indictment. We therefore overrule Derichsweiler's third and fifth points.

### D. Sufficiency of the Evidence to Prove Enhancements

We turn now to Derichsweiler's contention that the State failed to prove that the 2003 conviction was final before he committed the 1998 offense. The hypothetically correct punishment charge would have alleged that the 1998 conviction was final before Derichsweiler committed the 2003 offense. *See Young*, 14 S.W.3d at 750; *see also* Tex. Penal Code Ann. § 12.42(d); *Byrd*, 336 S.W.3d at 246; *Malik*, 953 S.W.2d at 240. The punishment-phase evidence shows that the 1998 conviction was final before Derichsweiler committed the 2003 offense, and Derichsweiler does not argue otherwise. To the extent that the sequence of convictions proved at trial varied from the impossible sequence alleged in the indictment, the variance was immaterial because the State was not required to allege the sequence in the first place. *See Gollihar*, 46 S.W.3d at 257.

Weighing the evidence against the hypothetically correct jury charge and in the light most favorable to the prosecution, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Derichsweiler had previously been finally convicted of two felony offenses and that the second

14

previous felony conviction was for an offense that occurred subsequent to the first previous conviction having become final.  *See* Tex. Penal Code Ann. § 12.42(d); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Thus, the evidence was sufficient to support the enhancement of Derichsweiler's punishment under section 12.42(d).  We overrule Derichsweiler's fourth point.

## V. CONCLUSION

Having overruled all of Derichsweiler's remaining points on remand, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J. concurs without opinion.

PUBLISH

DELIVERED:  January 19, 2012

15