

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00055-CR

---------

LADARIUS MARKEITH REED                         APPELLANT

V.

THE STATE OF TEXAS                               STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Ladarius Markeith Reed appeals his convictions for aggravated robbery. We affirm.

## Background Facts

On June 20, 2012, Nathan Tumanuvao and his girlfriend, Christina Lee, agreed to meet Tumanuvao's friend Danny Farmer in a McDonald's parking lot in

---

[1]*See* Tex. R. App. P. 47.4.

Arlington to purchase a gun. Tumanuvao drove Lee's car to the parking lot and waited for Farmer. Around 11:00 p.m., Farmer and Appellant, whom neither Tumanuvao nor Lee had met before, arrived at the parking lot and got into Lee's car. Farmer sat in the back seat behind Lee, and Appellant sat behind Tumanuvao. Tumanuvao greeted Farmer and then asked, "Can I see [the gun]?" Appellant then pointed the gun at Tumanuvao's head and said, "Run it, I want everything, give me everything you have."[2] Tumanuvao asked Farmer, "[W]hat's wrong with your friend?" Appellant said, "[E]verybody shut up, everybody—I'm going to kill everybody in this car."

Tumanuvao exited the car. He tried holding the rear driver side door shut so that Appellant could not get out of the car. Appellant kicked the door open, knocking Tumanuvao to the ground. Appellant got out of the car and shot Tumanuvao in the stomach. Appellant and Farmer then ran off.

Lee went to call 911 and found that her phone was not in the car. She found someone in the drive-through lane at the McDonald's who called 911 for her. The police arrived, and Tumanuvao was taken to the hospital. Tumanuvao underwent emergency surgery, but doctors were not able to remove the bullet. Lee went with police detectives to the police station to give her statement and to view some lineups. She identified Farmer from one lineup.

---

[2]Tumanuvao testified that "run it" means "give me what you got."

The next morning, Lee got on Facebook to see if she could identify any of Farmer's friends as the shooter. She saw Appellant's picture under the name "Markey Reed." She called a police detective, gave him the name, and agreed to return to the police station to view another lineup. She identified Appellant from that photo lineup.

Appellant was charged with two counts of aggravated robbery. A jury found him guilty on both counts. During the punishment phase, Appellant pleaded not true to the enhancement allegations that he had previously been convicted of a felony. The jury found the enhancement allegations true for both counts and assessed a punishment of twenty-six years' confinement for Count 1 and fifteen years' confinement for Count 2. The trial court sentenced Appellant accordingly, with both sentences to run concurrently. Appellant then filed this appeal.

## Discussion

### I. Enhancement paragraph

In his first issue, Appellant argues that the evidence is insufficient to support the findings of true to the enhancement paragraph because the State failed to prove that he had a previous felony conviction.

Because the purpose of the enhancement paragraphs is to provide notice, "'it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense.'" *Derichsweiler v. State*, 359 S.W.3d 342, 349 (Tex. App.—Fort Worth

3

2012, pet. ref'd) (quoting *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd)). The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). This principle applies equally to the affirmative findings necessary to sustain the imposition of an enhanced punishment; the sufficiency of the evidence of the enhancements should be measured by the hypothetically correct jury charge for the enhancement. *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000); *see Derichsweiler*, 359 S.W.3d at 349.

Generally, the State must prove enhancement allegations as alleged in the indictment. *Ex parte Augusta*, 639 S.W.2d 481, 485 (Tex. Crim. App. 1982), *overruled on other grounds by Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999). But a hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances between the indictment and the evidence. *See Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001); *Derichsweiler*, 359 S.W.3d at 349–50. A variance between the wording of an indictment and the evidence presented at trial is fatal only if it is material and prejudices the defendant's substantial rights. *Gollihar*, 46 S.W.3d at 257. When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial. *Id.*

4

Appellant argues that the State only proved that he had been adjudicated delinquent by engaging in conduct that would have constituted a felony and not a felony conviction as the indictment alleged. However, an adjudication by a juvenile court that a child engaged in delinquent conduct constituting a felony for which he was committed to the Texas Youth Commission is considered a "final felony conviction" for purposes of enhancement. Tex. Penal Code Ann. § 12.42(f) (West Supp. 2013); *see Fortier v. State*, 105 S.W.3d 697, 701 (Tex. App.—Amarillo 2003, pet. ref'd). At trial, the State introduced certified copies of the trial court's orders adjudicating Appellant delinquent for the offense of aggravated robbery-deadly weapon, which is a felony, and committing him to the Texas Youth Commission. *See id.* § 29.03(a)(2) (West 2011). Weighing the evidence against the hypothetically correct jury charge and in the light most favorable to the prosecution, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Appellant had previously been convicted of a felony. *See id.* § 12.42(f); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The evidence is therefore sufficient to support the jury's findings of true to the enhancement paragraph. We overrule Appellant's first issue.

## II. Lesser-included offense

In his second issue, Appellant argues that the trial court erred by not submitting a jury instruction on the lesser-included offense of aggravated assault. We use a two-step analysis to determine whether an appellant was entitled to a

5

lesser-included offense instruction.  *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

First, the lesser offense must come within article 37.09 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  An offense is a lesser-included offense of another offense, under article 37.09(1), if the indictment for the greater-inclusive offense either:  (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.  *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).  In this case, the indictment alleged all of the elements of aggravated assault.[3]

---

[3]The elements of aggravated robbery as alleged in the indictment in Count 1 were that Appellant, at the stated time and place: (1) while in the course of committing theft of property and with intent to obtain or maintain control of said property, (2) intentionally or knowingly caused bodily injury, and (3) used or exhibited a deadly weapon in the form of a firearm.  *See* Tex. Penal Code Ann. §§ 29.02(a)(1), 29.03(a)(2) (West 2011).  The statutory elements of aggravated assault as applicable to Count 1 are that Appellant (1) intentionally or knowingly caused bodily injury and (2) used or exhibited a deadly weapon during the commission of the assault.  *See id.* §§ 22.01(a)(1) (West Supp. 2013), 22.02(a)(2) (West 2011).  The elements of aggravated robbery as alleged in Count 2 were that Appellant (1) while in the course of committing theft of property and with intent to obtain or maintain control of said property, (2) intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death, and (3) used or exhibited a deadly weapon in the form of a firearm.  *See id.*

6

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Appellant argues that some evidence exists in the record that would permit the jury to find that he was guilty of only aggravated assault because the evidence is subject to an alternative interpretation that Appellant shot Tumanuvao "for reasons that had nothing whatsoever to do with theft (the money was, after all, left untouched)." The only evidence presented at trial, however, was that Appellant shot Tumanuvao during the course of a robbery. There was no evidence that he shot Tumanuvao for any other reason.

Tumanuvao testified that he asked to see the gun, and Appellant pointed the gun at Tumanuvao's head and said, "Give me your shit," and, "Run it, give

---

§§ 29.02(a)(2), 29.03(a)(2). The statutory elements of aggravated assault as applicable to Count 2 are that Appellant (1) intentionally or knowingly threatened another with imminent bodily injury and (2) used or exhibited a deadly weapon. *See id.* §§ 22.01(a)(2), 22.02(a)(2).

7

me your stuff." Tumanuvao's girlfriend Lee also testified that Appellant said, "Run it, I want everything, give me everything you have." Lee testified that Appellant also told Farmer, "[G]ive me what you have too. I'm not playing," and that Farmer gave Appellant the money from his pockets. Katina Booker testified that she drove Farmer and Appellant to the parking lot that night. She waited in the car while they met with Tumanuvao, and when Farmer and Appellant returned, they told her that they had just robbed someone.

To warrant an instruction on the lesser-included offense, "there must be some evidence directly germane to the lesser-included offense for the factfinder to consider." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998). There is no evidence in this case that if Appellant was guilty at all, he was guilty only of the lesser-included offense. *See Royster v. State*, 622 S.W.2d 442, 444 (Tex. Crim. App. 1981) (holding that defendant was not entitled to charge on lesser-included offense of aggravated assault when only evidence was that the victim saw defendant run off with a woman's purse, the victim gave chase, and the defendant slashed at him with a knife). Thus, the trial court did not err by refusing the requested instruction on aggravated assault. We overrule Appellant's second issue.

## III. Variance

In his third issue, Appellant argues that the evidence is insufficient to support a conviction under Count 1 because the indictment named the

8

complainant as Qumanuvao, but all the evidence concerned a complainant named Tumanuvao.

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar*, 46 S.W.3d at 246. Texas courts routinely treat the issue of variance as one concerning the sufficiency of the evidence. *Id.* at 247. The variance must be material to render the evidence insufficient. *Id.* at 257. A material variance is one that is likely to prejudice the defendant's substantial rights by either failing to give the defendant notice of the charges or by allowing a second prosecution for the same offense. *See Byrd*, 336 S.W.3d at 248. Only a material variance between the indictment and the proof presented at trial renders the evidence insufficient and requires reversal. *Mueshler v. State*, 178 S.W.3d 151, 154 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Gollihar*, 46 S.W.3d at 257). Conversely, an immaterial variance is disregarded in a sufficiency-of-the-evidence review. *Gollihar*, 46 S.W.3d at 258.

The difference between "Qumanuvao" and "Tumanuvao" is of the kind that the Court of Criminal Appeals has held to be idem sonans, meaning "the same sound." *See Flanagan v. State*, 620 S.W.2d 591, 597–98 (Tex. Crim. App. 1981) (op. on rehearing) (holding "Cecil Chatman" and "Cecil Chapman" to be idem sonans and the variance between them to be immaterial). Appellant contends that the difference between the two names is so large that he was misled to his prejudice regarding the identity of the victim. Yet the difference was not so great

9

that he objected when the indictment was read in open court alleging that "Tumanuvao" was the victim[4] or when the jury submitted a question to the trial court noting that on the second page of the jury charge "Nathan's name is misspelled . . . from Tumanuvao to Qumanuvao" and requesting that it be "corrected in document for proper documentation." *See Martin v. State*, 541 S.W.2d 605, 608 (Tex. Crim. App. 1976) ("Questions involving the rule of idem sonans must be raised in the first instance at trial. If the issue is raised for the first time on appeal, it will be treated as having been waived and will present nothing for review."). We overrule Appellant's third issue.

## IV. Ineffective assistance of counsel

In his fourth issue, Appellant argues that his trial counsel rendered ineffective assistance by failing to inform Appellant that there was a deadline by which he must accept the plea bargain offered by the prosecutor.

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052,

---

[4]The indictment contains an interlineation changing "Qumanuvao" to "Tumanuvao" with the initials of one of the prosecutors and the date January 17, 2013, which was thirteen days prior to trial. The record is silent, however, as to whether the amendment was made with the leave of the trial court or after notice to the defendant. *See* Tex. Code Crim. Proc. Ann. arts. 28.10(a), 28.11 (West 2006).

2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).  In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant.  *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).  An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim.  *Id*. (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case.  *Thompson*, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.  *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

On January 23, 2013, the Thursday before trial, Appellant's attorney called the prosecutor and asked if the prosecutor would offer a plea bargain for a fifteen-year sentence.  The prosecutor agreed, and Appellant's attorney conveyed the offer to Appellant.  Appellant's attorney testified that the prosecutor

11

did not indicate that there was a deadline by which Appellant must accept the offer and that he did not convey any deadline to Appellant. Appellant's attorney stated that Appellant told him, "I can't do 15," and asked for a ten-year agreement. Appellant testified that he told his attorney that he "wasn't ready" to accept the offer because he wanted to discuss it with his family. Appellant's attorney asked the prosecutor for a ten-year sentence, and the prosecutor refused.

On the Monday prior to trial, Appellant's attorney and the prosecutor again discussed a plea bargain; Appellant's counsel requested a twelve-year sentence, and the prosecutor refused. The prosecutor told Appellant's counsel that she was no longer willing to offer a fifteen-year bargain. On the morning of trial, Appellant's counsel again attempted to negotiate a plea bargain of ten years' confinement, which was rejected by the prosecutor. Appellant then agreed to take the fifteen-year offer. The prosecutor told Appellant "that the offer of 15 was last week, and it had been rejected, and that the offer today would not go below 20." Appellant rejected the twenty-year offer.

Appellant admits that his attorney conveyed to him all of the plea bargains offered by the prosecutor and that his attorney told him that if a jury found him guilty, he was likely to "get substantially more than" the minimum sentence of fifteen years. He argues that his counsel's performance was deficient because he

did not explain to appellant that any counteroffers would extinguish the fifteen-year offer, because defense counsel did not make the counteroffers while expressly reserving the option of accepting the fifteen-year offer, and because defense counsel never determined a deadline for the fifteen-year offer, and therefore, never communicated to appellant the need to expressly accept or reject the fifteen-year offer that Thursday, or, at the very least, before the weekend, [because] that was the prosecutor's deadline.

The Court of Criminal Appeals has held,

[T]o establish prejudice in a claim of ineffective assistance of counsel in which a defendant . . . rejects a plea-bargain because of bad legal advice, the applicant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain.

*Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013).

Here, Appellant failed to prove either deficient performance or prejudice. Although Appellant testified that he did not tell his trial counsel that he "couldn't do 15" and that if he had known that the offer would be withdrawn by Monday that he would have accepted it, he did admit that he told his attorney to "[g]o ask for 10" and that he "wasn't ready" to accept the fifteen-year offer on Thursday. The trial court, as the trier of fact, was the sole judge of the witnesses' credibility and the inferences to be drawn from their testimony. *See Melton v. State*, 987 S.W.2d 72, 75 (Tex. App.—Dallas 1998, no pet.). The trial judge was free to believe Appellant's testimony that he "wasn't ready" to accept an offer on Thursday and his counsel's testimony that he rejected the offer. Indeed, the record establishes that counsel performed as requested by his client and sought

13

a lower sentence.  Appellant has not established that his counsel's failure to affirmatively determine a deadline for acceptance of the offer was unreasonable or unprofessional under the circumstances of this case, and the record supports that the prosecutor did not communicate a deadline at the time the offer was made.  Appellant's counsel communicated all offers completely, timely, and accurately.  We overrule Appellant's fourth issue.

## Conclusion

Having overruled Appellant's four issues on appeal, we affirm the trial court's judgment.


/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 29, 2014

14