

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-24-00157-CR

———————————————

AMIR SWIFY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F22-3504-211

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Amir Swify appeals his conviction for recklessly or negligently causing bodily injury to an elderly individual. In two issues, Swify contends that the trial court (1) abused its discretion by permitting a police officer to testify as an expert regarding victim dynamics in family violence cases and (2) impermissibly commented on the weight of the evidence by inserting factual details into the jury charge that were not reflected in the State's notice of intent to enhance punishment. We will affirm.

## I. BACKGROUND

In May 2022, Swify got into an argument with his 75-year-old father that escalated into a physical confrontation during which Swify struck his father in the face. Swify's mother called 911, and officers from the Corinth Police Department were dispatched to the scene.

Lieutenant Rashaan Douglas was the first officer to arrive. He noticed a laceration and blood on Swify's father's nose and asked him what had happened. Swify's father stated that Swify had "thr[own] a hook at him."[1] Lieutenant Douglas

---

[1]At trial, Swify's father testified that he had been mistaken when he told Lieutenant Douglas that Swify had given him a hook to the face and demonstrated for the jury what he claimed had actually happened. According to his testimony and in-court demonstration, he had been sitting in a chair with Swify standing over him, and when he attempted to stand, he and Swify became tangled. Then, as Swify attempted to physically move his father out of the way, his hand hit his father's glasses and injured his nose.

determined that Swify's father's injuries were consistent with his having been punched in the face and placed Swify under arrest for family violence.

Swify was charged with intentionally or knowingly causing bodily injury to an elderly individual. *See* Tex. Penal Code Ann. § 22.04(a)(3). At trial, Swify's father attempted to minimize what had happened and expressed that he did not want to see Swify convicted or punished. The jury, having considered all the evidence, did not convict Swify of the charged offense but instead convicted him of the lesser-included offense of recklessly or negligently causing bodily injury to an elderly individual. Following a punishment trial, the jury assessed Swify's sentence at 14 years in prison, and the trial court sentenced him accordingly.[2] This appeal followed.

## II. DISCUSSION

## A. Admission of Purported Expert Testimony

In his first issue, Swify contends that the trial court abused its discretion by permitting Lieutenant Douglas to testify as an expert regarding victim dynamics in family violence cases. We disagree.

---

[2]As discussed below in connection with Swify's second issue, the indictment contained an enhancement paragraph alleging that Swify had previously been convicted of felony aggravated robbery, and the State filed a Notice of Intent to Use Prior Convictions for Enhancement alleging that Swify had a second prior felony conviction for aggravated assault. The jury found both of these enhancement allegations to be true. Thus, the punishment range for Swify's offense was enhanced to that of second-degree felony. *See* Tex. Penal Code Ann. § 12.425; *see also id.* § 22.04(f), (g).

3

### 1. Standard of Review and Applicable Law

We review the trial court's decision to admit a witness's testimony for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Smith v. State*, Nos. 02-21-00201-CR, 02-21-00202-CR, 2022 WL 2979182, at *3 (Tex. App.—Fort Worth July 28, 2022, no pet.) (mem. op., not designated for publication). Generally, the trial court may admit a witness's statements as either lay testimony or expert testimony. *See* Tex. R. Evid. 602, 701–02.

A lay witness may testify to matters within his personal knowledge and to opinions or inferences that are "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Tex. R. Evid. 602, 701; *see Rhomer*, 569 S.W.3d at 669; *see also Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) (explaining that "as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions . . . even when the witness has experience or training"). An expert witness, on the other hand, must be "qualified . . . by knowledge, skill, experience, training, or education" and can testify to matters on which "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702; *see Rhomer*, 569 S.W.3d at 669.

Because "all perceptions are evaluated based on experiences," *Hawkins v. State*, No. 06-08-00087-CR, 2009 WL 30255, at *4 (Tex. App.—Texarkana Jan. 7, 2009, pet.

ref'd) (mem. op., not designated for publication), "[t]here is no distinct line between lay opinion and expert opinion," *Rhomer*, 569 S.W.3d at 669, and courts are often called upon to determine where a given portion of testimony falls on this spectrum. *See, e.g.*, *Smith*, 2022 WL 2979182, at \*4–5 (collecting cases affirming admission of lay officer testimony regarding, inter alia, whether two stab wounds reflect the same type of knife, whether the victim exhibited indicators of strangulation, whether the victim's wounds were defensive, whether the defendant's hands showed symptoms of methamphetamine exposure, whether bruises appeared new or old, and the apparent cause of the victim's injuries).

## 2. Relevant Background

Swify filed a motion in limine asking the trial court to prohibit the State "from mentioning, alluding [to], or . . . eliciting any expert opinion or scientific evidence" until the trial court had determined such evidence's admissibility. Pursuant to this motion, the trial court held a pretrial hearing outside of the jury's presence to determine, among other things, whether certain testimony that the State intended to elicit from Lieutenant Douglas was admissible. During this hearing, the following exchange took place:

> THE COURT: All right. Mr. Cagle, what are your objections regarding the lieutenant's testimony?
>
> MR. CAGLE: Your Honor, I think both his mentioning of the victim having anxiety and the typical behaviors of a victim are, at best, anecdotal, and, at worst, he doesn't have the experience post-arrest with

5

victims on a regular basis to even have an idea of the regular outcomes in these matter[s].

He admitted that he, the majority of time, . . . never has contact with them again and doesn't know what these are. So for him to speculate as to what happens in a typical family violence case or an atypical family violence case, I think is, one, would be treading on expert testimony that he's not qualified to give; and, two, even as a lay opinion testimony, would be unreliable.

. . . .

THE COURT: So oftentimes in cases like this with 702-type hearings, it walks a fine line between what's expert testimony and lay testimony. Lieutenant testified that he's of 22 years of experience and has attended family violence calls more times than he can count and interviewed victims and potential perpetrators of family violence acts. And based upon the testimony that he gave, it's not outside the bounds of what he's been asked.

In the event that it was crossing over slightly into expert testimony, his training and experience would certainly qualify as that based on the limited information that he was given. We certainly didn't dive deep into any type of psychiatric or psychological evaluations or anything of that nature, but the questions that you asked are fair in front of the jury that his testimony will be allowed. Thank you.

Lieutenant Douglas later testified in front of the jury. Part of his trial testimony touched on the manner in which family violence victims behave. For example, he expressed that, based on his experience dealing with family violence victims, they (1) act very unpredictably, (2) exhibit a wide array of emotions and reactions, (3) often change their minds about what they want to see happen with a case, and (4) often minimize or change their story to try to get someone out of trouble. He also testified that Swify's father's desire not to see Swify punished was

6

not surprising and was consistent with what he had seen from many family violence victims.

Swify did not object when Lieutenant Douglas testified at trial regarding typical victim behaviors in family violence cases. Indeed, he did not raise any trial objections to Lieutenant Douglas's testimony on the grounds that he was offering an unreliable opinion or that he had not been qualified as an expert under Evidence Rule 702.[3]

### 3. Analysis

Swify argues that the trial court abused its discretion by allowing Lieutenant Douglas to testify as an expert regarding the typical behavior of family violence victims and the extent to which Swify's father's actions—particularly his attempts to minimize what had happened and his desire not to see Swify convicted or punished—

---

[3]Because Swify objected to the unreliability of Lieutenant Douglas's victim-behavior testimony only at the pretrial motion-in-limine hearing and did not object on Rule 702 grounds when Lieutenant Douglas testified at trial, the State contends that he failed to preserve his complaint. But while a motion in limine itself does not preserve error, error can be preserved by a timely objection made in a hearing outside the presence of the jury. *Manns v. State*, 122 S.W.3d 171, 190 (Tex. Crim. App. 2003). In any event, because we overrule Swify's first issue on the merits, we need not address this preservation issue. *See, e.g.*, *Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (expressly declining to decide whether an objection was required to preserve error on an issue because it could be overruled on the merits); *Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 n.4 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) ("Because we overrule this point of error on the merits, we do not address whether error was preserved."); *see also* *Redmond v. State*, 629 S.W.3d 534, 542 n.11 (Tex. App.—Fort Worth 2021, pet. ref'd) (noting that while "'a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation[,]'" it "may still affirm the judgment on another basis" (quoting *Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010))).

were consistent with this typical behavior. But as this court has previously recognized, a police officer need not qualify as an expert to testify as to how family violence victims typically behave. *See Zaff v. State*, No. 02-23-00320-CR, 2024 WL 3714996, at \*4–5 (Tex. App.—Fort Worth Aug. 8, 2024, pet. ref'd) (mem. op., not designated for publication). In *Zaff*, we held that a police detective "could testify as a lay witness that delayed reporting, a lack of visible injuries, a private setting, and a lack of video evidence were all common" in family violence cases because this testimony was based on "his years of experience handling and investigating" such cases. *Id.* at \*5.

The same is true here. Much like the detective in *Zaff*, Lieutenant Douglas formulated his opinions regarding victim dynamics in family violence cases by drawing on his extensive experience responding to and investigating family violence matters.[4] Because Lieutenant Douglas's opinions were based on his experience, not a scientific theory, and were helpful to determining facts in issue—namely, whether Swify assaulted his father and whether his father's testimony was credible—his

---

[4]Although Swify frames his first issue as a Rule 702 challenge, he appears to argue that regardless of whether Lieutenant Douglas testified as an expert or a lay witness, his experience did not qualify him to opine regarding the typical behavior of family violence victims. But Lieutenant Douglas testified that he had 22 years of experience as a peace officer and had responded to "a lot" of family violence calls— "more than he could remember." Because there is evidence in the record to support the trial court's determination that Lieutenant Douglas had sufficient experience to offer the challenged opinion testimony, we cannot conclude that the trial court abused its discretion. *See Roberson v. State*, 100 S.W.3d 36, 39 (Tex. App.—Waco 2002, pet. ref'd).

8

opinions were admissible as lay witness testimony under Rule 701. *See* Tex. R. Evid. 701; *Zaff*, 2024 WL 3714996, at *5; *see also Roberson*, 100 S.W.3d at 39 (holding that trial court did not abuse its discretion by allowing police officer to offer opinion as a lay witness that "it is more common for sexual assault victims to reveal more as they become comfortable talking with law enforcement" because it "was based upon his personal knowledge and experience" and was helpful in determining a fact in issue). Accordingly, the trial court did not abuse its discretion by admitting this testimony.

We overrule Swify's first issue.

## B. Jury Charge

In his second issue, Swify contends that the trial court impermissibly commented on the weight of the evidence by inserting factual details into the jury charge that were not reflected in the State's notice of intent to enhance punishment. We disagree.

### 1. Relevant Background

Here, the indictment, as amended before trial, contained an enhancement paragraph alleging that "on the 15th day of January, 2009," Swify had been "convicted of the felony offense of [a]ggravated [r]obbery." Then, shortly before the trial's punishment phase, the State filed a Notice of Intent to Use Prior Convictions For Enhancement that contained the same enhancement paragraph but with a conviction date of "the 15th day of January" (sans the "2009") plus a second enhancement

9

paragraph alleging that Swify had also been convicted of "the felony offense of [a]ggravated [a]ssault" on "the 15th day of January."

At trial, Swify pleaded "true" to the first enhancement paragraph and "not true" to the second paragraph. The State presented evidence, including a penitentiary packet and judgments, showing that Swify had been convicted of both aggravated robbery and aggravated assault on January 15, 2009. The court's charge on punishment supplied the year that had been missing from the State's notice, stating that the prior convictions had allegedly occurred "on or about January 15, 2009."

## 2. Analysis

In essence, Swify contends that there was a fatal variance between the enhancement paragraphs and the court's charge and that, as a result, the court's charge was an improper comment on the weight of the evidence. But because the variance is not material, it is not fatal to the trial court's judgment.

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In a variance situation, the State has satisfied its burden of proof but has done so "in a manner that varies from the allegations in the charging instrument." *Id.* However, "only a material variance is fatal [and a] variance between the charging instrument and the proof at trial is material only if it operated to the defendant's surprise or prejudiced his rights." *Id.* at 249 n.8 (quoting *Rojas v. State*, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998)).

10

Surplusage—an allegation in the charging instrument that is not legally essential—may be responsible for a variance between the pleading and the proof. *Id.* at 249. When a variance is caused by surplusage, it may be disregarded as immaterial. *Id.* at 250.

The State was not required to allege the dates on which the enhancing convictions became final. *Derichsweiler v. State*, 359 S.W.3d 342, 349 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Hollins v. State*, 571 S.W.2d 873, 876 n.1 (Tex. Crim. App. 1978)). Thus, the date allegations amounted to surplusage. *See Gollihar*, 46 S.W.3d at 249. Because the variance at issue was caused by surplusage, it may be disregarded as immaterial and is not fatal to the judgment. *See id.* at 250; *see also Derichsweiler*, 359 S.W.3d at 350 ("Because it was not necessary for the State to allege the dates on which the enhancing convictions became final or the sequence of the enhancing convictions, the indictment[']s nonsequitur allegation that the 2003 DWI conviction was final before the commission of the 1998 assault is immaterial."); *Williams v. State*, No. 01-05-00766-CR, 2007 WL 1153041, at *5 (Tex. App.—Houston [1st Dist.] Oct. 31, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that because the variance between the indictment's enhancement paragraph allegation that the appellant had committed a prior offense in "1990" and the charge's statement that he had been convicted of the prior offense on "August 27, 1990" was "neither material nor fatal," the charge was not an improper comment on the weight of the evidence).

We overrule Swify's second issue.

### III. CONCLUSION

Having overruled both of Swify's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 7, 2025